MERCY P. BAUSMAN and others *vs.* ANDERSON D. EADS and others.

May 11, 1891.

**Mortgage — Estoppel to Question Void Foreclosure by Advertisement.**—*Bausman* v. *Faue*, 45 Minn. 412, followed, to the effect that certain facts constitute an estoppel as to the validity of a foreclosure, under a power, of a mortgage.

**Same—Protection of Bona Fide Purchaser under Sale on a Paid Mortgage.**—*Merchant* v. *Woods*, 27 Minn. 396, followed, to the effect that when a mortgage of real estate with a power of sale has been paid it is the duty of the owner of the equity of redemption, as between him and third parties having no notice thereof, to procure evidence thereof to be put on record; and, if he fail to do so, and the mortgage is apparently regularly foreclosed under the power, an innocent purchaser under such foreclosure, if his evidence of title be first recorded, will be protected.

**Same—Heir Estopped by Neglect of Ancestor.**—An heir may be estopped to question a foreclosure under a power, apparently good by the record, by his ancestor's neglect to question it, (in this case, for eight years,) though the property be not purchased by a *bona fide* purchaser till after the ancestor's death.

**Action against Grantor and Grantees with Warranty—Defence by Grantor for Grantees in Default.**—A grantor of real estate by warranty deeds, sued with his grantees in an action to set aside the title which he assumed to have and to convey, may defend in his own name for the defendants served but not answering.

On December 31, 1855, one Alexander Moore was owner in fee of the N. ½ of the S. E. ¼ and the S. W. ¼ of the N. E. ¼ of section 9, in township 29, range 24, in Hennepin county, and on that day he with his wife executed a mortgage thereon to one Hall to secure payment of $277.37, according to the terms of a promissory note of the same date. The mortgage (hereinafter called the "Hall mortgage") contained the usual power of sale and was recorded on the day of its execution. On August 6, 1856, Moore and wife conveyed the land in fee to Jacob B. Bausman and Zenas E. Britton for the expressed consideration of $4,200, with a covenant against incumbrances except the Hall mortgage, and a covenant of warranty. This deed was

recorded August 9, 1856. On August 7, 1856, Bausman and Britton mortgaged the land to Moore, to secure payment of $2,921, according to the terms of their two notes of that date, one for $1,111, payable January 8, 1857, and the other for $1,810, payable August 7, 1857. This mortgage was recorded August 7, 1856. On January 27, Moore transferred the notes and assigned the mortgage to Uriah Thomas, the assignment being recorded February 4, 1857. On June 27, 1857, Bausman and Britton mortgaged the S. W. ¼ of the N. E. ¼ and the N. W. ¼ of the S. E. ¼ of the same section 9 to Theodore French, to secure payment of their note of $4,000, of the same date, payable to his order two years thereafter, with interest annually at 30 per cent. per annum. The note was at the same time delivered to French, and the mortgage was recorded July 8, 1857. At the same time, (June 27, 1857,) the plaintiff Mercy P. Bausman, then the wife of Jacob B. Bausman, as further security for the same note, mortgaged to French all her interest in the land, which mortgage was recorded July 16, 1857. At the time of the making of these mortgages, French, by agreement with Bausman and Britton, retained from the loan of $4,000 for which the note and mortgages were given, a sum sufficient to satisfy the prior mortgages to Hall and to Moore, upon the agreement that he might therewith either pay those mortgages, or purchase and hold them for his better security, as he might prefer.

Before the making of the mortgages to French, and on June 23, 1857, Bausman and Britton conveyed to Harriet C. French five acres in the N. E. ¼ of the S. W. ¼ of the N. E. ¼ of section 9, and known as "Lot 1, in Oakland," for the consideration of $1,500. On July 10, 1857, Thomas, for the consideration of $2,000, indorsed and transferred to French the note of $1,810 secured by the mortgage from Bausman and Britton to Moore, and also assigned that mortgage to him, the assignment being recorded September 18, 1871. About the same time French also purchased of Hall the note and mortgage made to the latter by Moore.

On September 16, 1859, French caused the two mortages of June 27, 1857, made to him by Bausman and Britton and by Mrs. Bausman, to be foreclosed by sale of the property (except the 5 acres conveyed to Harriet C. French) pursuant to the power of sale therein

contained and conformably to the statute, and on September 27th, received the proper sheriff's certificate of sale, which was recorded September 28, 1859. No redemption from this sale was ever made. On October 26, 1859, French mortgaged to Lyman D. Stevens, of Concord, N. H., all the lands included in the Hall mortgage, to secure payment of $28,149.26, according to the conditions of 9 promissory notes described in the mortgage, representing an indebtedness in part owing to Stevens and in part to other creditors of French. This mortgage was recorded November 22, 1859. On February 25, 1860, French died at the city of St. Paul, in this state, leaving surviving him his widow, (the above-mentioned Harriet C. French,) his father, and several sisters, but no children. By his nuncupative will, proved in the Ramsey county probate court, he bequeathed all his personal estate to his widow. By an agreement between the widow, the father, and the creditors of French, including Stevens, title to the homestead was conveyed to the widow, in consideration of which she agreed to and did surrender and abandon to the father and the creditors all her estate, interest, and claim in and to all his other real estate, and she has never since asserted any claim thereto.

Hall died in June, 1865, in the state of New York. In August, 1870, Charles C. Lund, one of French's executors, placed in the hands of R. B. Galusha, an attorney-at-law, of St. Paul, the Hall note and mortgage, with directions to foreclose. Galusha, not knowing that Hall was dead, proceeded to foreclose by advertisement under the power, and at the sale, on October 22, 1870, purchased the property at the price of $590, and on the same day received the sheriff's certificate of sale, which was recorded November 11, 1870. The notice of sale was signed: "Joseph Hall, Mortgagee. R. B. Galusha, Attorney for Mortgagee." The foreclosure proceedings were in all respects regular in form. Galusha paid nothing on his purchase, holding it for the benefit of French's estate. On November 24, 1871, Galusha, at the request of the executor, conveyed part of the land to the wife of the executor, (who was also a sister of French,) for a nominal consideration, the deed being recorded October 18, 1873; and on August 22, 1876, she and her husband, for a nominal consideration, conveyed to Lyman D. Stevens, trustee, the deed being recorded

February 19, 1881. The property conveyed by these deeds was the S. W. ¼ of the N. E. ¼ and the N. W. ¼ of the S. E. ¼ of section 9. On February 2, 1882, Stevens conveyed the same property to Joseph A. Wheelock, of St. Paul, to be managed and sold in the interest of French's creditors, pursuant to a parol agreement between Stevens and the creditors, all parties then supposing that Stevens had acquired title in fee through the foreclosure of the Hall mortgage. This deed was recorded February 7, 1882, and a second deed, for better confirming the title in Wheelock, was made by Stevens and wife on October 19, 1882, and recorded November 6, 1882.

On October 3, 1882, Wheelock contracted to sell the same land to the defendant William J. Bursell for $19,772.50, being at the rate of $250 an acre. Bursell was then informed of the mortgage from French to Stevens, and that Wheelock held the title for the benefit of French's creditors, to whom the purchase-money would be paid. On October 26, 1882, Bursell (who had paid $100 on making the contract) paid $4,843.50 of the purchase price, and received a deed from Wheelock, and gave back a purchase-money mortgage for $14,829, to be paid in three equal annual payments with 7 per cent. interest. The deed and mortgage were both recorded October 27, 1882. Prior to April 4, 1884, Bursell paid the mortgage in full, and on that day he received from Wheelock and recorded a deed of satisfaction. All the money paid by Bursell was paid over by Wheelock to the creditors secured by the mortgage of $28,149.26 made by French to Stevens, and the indebtedness secured by that mortgage was never paid in full. During the negotiation with Wheelock, the defendant Eads and three other of the defendants became interested with Bursell in the purchase, and furnished part of the consideration, and each had the same knowledge as Bursell as to Wheelock's title and how the purchase-money was to be applied. In November, 1882, Bursell and his associates took possession of the land purchased, and caused a plat of it to be made and filed as "Silver Lake Addition to Minneapolis," on February 27, 1883. Afterwards Bursell made conveyances to his associates in parcels proportionate to their interests, and he and they have conveyed many of the lots by warranty deeds to purchasers who paid valuable and full considerations, without knowledge or notice of any

adverse claim or defect in the title.   Neither Stevens or Wheelock, nor Bursell or his associates, nor any of the purchasers from them, had any knowledge or notice of any irregularity in the foreclosure of the Hall mortgage prior to receiving their conveyances and paying the consideration therefor, nor prior to June, 1885, when Francis G. Burke, one of the plaintiffs, having learned of Hall's death, first gave publicity to that fact.   Nor had they or any of them any notice or knowledge of any payment or claim of payment of either Bausman and Britton's mortgage to Moore or French's mortgage to Stevens, and in their purchases they relied on the apparently perfect legal and equitable title appearing by the records in the registry of deeds.

In 1859 the value of all the land did not exceed $1,600, and in that year Bausman and Britton "abandoned said land to the incumbrances aforesaid then outstanding thereon, which then very greatly exceeded its value and were all then held and owned by the said Theodore French ; and never thereafter exercised any act of ownership respecting said land, nor asserted any claim thereto, nor paid any taxes thereon, nor paid any of said incumbrances nor interest thereon."   Bausman died intestate in May, 1882, and Britton died, intestate, in July, 1878, each leaving a widow and children, no one of whom "ever did any act respecting such land or had any knowledge that they had claim or color of claim of title thereto, or had any knowledge of any of the aforesaid deeds, mortgages, or foreclosures, or of the existence or death of Joseph Hall, or of said land or the occupation thereof, until the early part of the year 1885, when the plaintiff Francis G. Burke, having examined the records in the office of the register of deeds respecting the title to said land, and having learned the fact and time of Hall's death, notified said widows and heirs of such facts, and caused them to claim title to said land."   By proper deeds such title as the widows and heirs of Bausman and Britton had, was conveyed to and vested in the plaintiffs before this action was brought.

On October 15, 1885, the widow of Theodore French (having become, by remarriage, Harriet C. Richardson) granted and quitclaimed the land (except the five acres known as "Lot 1 in Oakland") to Nelson Cobb, who afterwards conveyed to plaintiffs.   The deed to Cobb was recorded December 2, 1885.   On December 12, 1885, in an ac-

tion in the district court for Hennepin county, brought by certain heirs of Bausman and of Britton against Harriet C. Richardson, the plaintiffs therein were adjudged, as against her, to be absolute owners of the land (except such five acres.) On April 17, 1886, Stevens by deed assigned to Bursell the mortgage made to him by French, and on October 6, 1886, Harriet C. Richardson and her husband, by deed of that date, conveyed to Bursell all rights acquired by her by inheritance or descent from Theodore French, or through his will, in and to all mortgages and the debts thereby secured, held and owned by French in his lifetime, and all rights acquired by her by reason of any purchase at foreclosure of any of such mortgages.

On October 15, 1859, the land was sold for taxes of 1858; on January 12, 1860, French redeemed from the sale; and from that time until 1885 the taxes were paid by Stevens, Wheelock, Bursell, and Bursell's grantees.

This action was brought in the district court of Hennepin county, in 1887, by the widow and heirs of Bausman, and the heirs of Britton, and by Francis G. Burke and Edwin C. Bennett, grantees of the other plaintiffs, against Bursell and his associates and more than 150 of their grantees, the relief asked being that the court adjudge plaintiffs to be owners in fee; that the foreclosure of the Hall mortgage be adjudged a nullity; that the certificate of sale thereon and the affidavits thereof be adjudged to be clouds on plaintiffs' title, and that they be cancelled; that the defendants' claims of title under such foreclosure be adjudged of no validity; and that plaintiffs' title be quieted against the claims of the defendants and each of them. The action was tried by *Lochren,* J., who found the facts as above stated, and ordered judgment for all the defendants, although some who had been served with the summons had not answered, the court holding that Bursell's defence inured to their benefit, as they all claimed under him by warranty deeds, and also holding that relief against the Hall foreclosure, denied on the proofs as to some of the parcels, could not, in the same action and on the same proofs, be granted as to other parcels covered by the same bid, even on default. The plaintiffs appeal from the judgment entered on the decision.

· *Francis G. Burke* and *Geo. M. Bennett,* for appellants.

· *Edward Savage, M. B. Koon,* and *Shaw, Best & Cray,* for respondents.

GILFILLAN, C. J.   On one of the lines of defence presented by the defendants in this case, to wit, that based on the mortgage from Moore to Hall, and the title derived through the foreclosure of that mortgage, the facts found by the court below are practically identical with those on which this court decided the case of *Bausman* v. *Faue,* 45 Minn. 412, (48 N. W. Rep. 13.)   The plaintiffs assign as error that the evidence does not sustain the findings of fact that it was agreed between Bausman and Britton and French that the latter might purchase the Hall mortgage, and that he did purchase it; and they insist the evidence shows the agreement to have been that, with money of Bausman and Britton retained in his hands, French should pay the mortgage, and that he did pay, but did not purchase it.   If the facts were as plaintiffs claim, it would make no difference with the result.   Those facts would introduce into the case the feature upon which *Merchant* v. *Woods,* 27 Minn. 396, (7 N. W. Rep. 826,) was decided.   In that case the mortgage had been paid, so that, as between mortgagor and mortgagee, it was extinguished, and there could be no right to foreclose, but it had not been discharged of record.   The court held that when a mortgage containing a power of sale has been in fact discharged, it is the duty of the mortgagor or owner of the equity of redemption, as between him and third parties having no notice thereof, to procure the evidence of the discharge to be properly put upon record; that a failure so to do leaves the mortgagee apparently still clothed with power to foreclose; and that, upon a foreclosure under such apparent authority, an innocent purchaser, if his evidence of title be first recorded, will be protected. The mortgagor or owner of the equity of redemption cannot rest on the fact that the mortgage has been paid and the power to foreclose extinguished, cannot assume that no attempt will be made to exercise the power, if he permits it to appear by the record to be in full force.   As between him and innocent purchasers for value under the power, he will be bound by the record.   If the facts were as plaintiffs

claim, they would not tend to relieve the owners of the equity of redemption from the charge of negligence and acquiescence, which is an element in the estoppel to dispute the foreclosure. It is unnecessary, therefore, to consider whether, in the particulars so assigned as error, the evidence sustains the findings. So far as we regard the facts to be material, there is no question on them. It is also unnecessary to consider the assignments of error based on rulings of the court, admitting or excluding evidence bearing only on the question whether the mortgage was paid or purchased by French; and, as we hold the defence under the Hall mortgage to be established, it is unnecessary to consider any assignments referring to the evidence or facts to establish the other defences.

The brief of appellants makes the point that there could be no estoppel as to the interest of Charles Claire Britton, an heir of Zenas E. Britton, because, when the latter died, in 1878, Charles Claire was a minor, and it is claimed that a minor cannot be estopped by his laches. The fact that he was a minor does not appear. It is alleged in the complaint, denied in the answers, and the court made no finding upon it, and was not requested to make any. But, had the fact appeared, it would not have helped the plaintiffs. A minor may be estopped by the acts and conduct of the ancestor through whom he claims title. The Hall mortgage was foreclosed in 1870. Zenas E. Britton lived till 1878, eight years after the foreclosure, certainly an unreasonable time to allow the foreclosure to appear valid by the record if he intended to assert his right to the property, if he did not intend to let it go, indifferent what might become of it. Leaving the foreclosure undisturbed for that length of time would justify any one in the conclusion that it was valid; so that a purchaser, ignorant of the facts making it invalid, might, after such acquiescence, and without taking into account any acquiescence of the heir, rely upon the foreclosure as valid. The heir took his title subject to that condition of things.

The plaintiffs claim that they were entitled to judgment by default against some of the defendants, who were properly served and did not answer. There is a sufficient reason why they were not entitled to judgment against those defendants. They all derived their

titles through warranty deeds from the defendant Bursell, who did appear and defend. As he would be liable to them on his covenants in case of judgment against them setting aside such titles, he had a right to defend and prevent such judgment. It would have been more regular, perhaps, had he done so by answering in their names; but, being himself made a defendant, and the title being assailed at a point common to all the defendants, we do not see why he might not defend the titles of all derived through his warranty deeds.

Judgment affirmed.