## LOUIS SEITZ v. KARL FREDERICK SITZE AND OTHERS. FREDERICK L. GLASSING AND ANOTHER, APPELLANTS.[1]

June 18, 1943.

No. 33,462.

[1]Reported in 10 N. W. (2d) 426.

*John C. Zehnder* and *M. E. Culhane,* for appellants.

*Burton R. Sawyer,* for respondent.

THOMAS GALLAGHER, JUSTICE.

This is an action in equity to compel specific performance of a contract to devise or convey certain real estate in the city of Northfield. Plaintiff's action is based upon the claim that his father, Karl Frederick Sitze, now deceased, in 1913 agreed orally that upon his death and the death of his wife, plaintiff's mother, Johanne Christine Sitze, plaintiff would have the property constituting the homestead of the parents, provided that he and his wife took care of the parents throughout the remainder of their lives.

The court found that the contract had been made, that plaintiff had fully performed his part thereof, and adjudged him owner in fee of the premises. Defendants Frederick Louis Glassing and George A. Glassing each claim an undivided one-sixth interest in the premises by virtue of the laws of descent, and appeal from the judgment upon the grounds hereinafter specified.

The facts are as follows: Plaintiff and his wife, Emma, following their marriage in 1913 came to live with plaintiff's parents on the property in question. Title thereto was then vested in plaintiff's father. Friction developed, and plaintiff and his wife made plans to move. The parents thereupon besought them to remain, and a discussion took place at that time between plaintiff and his wife and plaintiff's father. Emma Seitz testified as to such conversation as follows:

"* * * I told him that I am going, and if I can't go I will go home, and he says, 'You ain't going to do such a thing,' he says, 'you stay here and see us through' and we get the place; if we would stay and see it through. * * * Then we stayed. * * * I looked after grandpa as long as he lived, and after grandma, too, as long

as she lived. * * * After grandpa died, * * * Louis and I, we stayed there with grandma."

Shortly thereafter, in 1914, plaintiff's father died. Plaintiff and his wife remained on the premises, caring for plaintiff's mother until her death in 1940, some 26 years later, at which time she was nearly 86 years of age. During all this time plaintiff purchased all food and clothing for his mother, paid all her medical expenses, paid all fuel bills, paid all taxes, and furnished repairs and improvements to the premises of the reasonable value of $804. His wife prepared the meals and otherwise assisted in caring for the mother.

Plaintiff is now 63 years of age. He is a night watchman. His education in school was limited to the sixth grade. He testified that he provided for his parents in compliance with and in reliance upon the agreement. There is no other property in the estate of either parent.

Plaintiff's brother, named as a defendant, lived across the street from plaintiff during all this time. He did not contest the proceedings and testified on behalf of plaintiff, although his testimony did not relate to the contract. Two nephews, sons of a deceased sister of plaintiff, are appellants here. They did not live at Northfield, and each claims an undivided one-sixth interest in the premises by virtue of the laws of descent. No probate proceedings have been instituted, and no legal action was commenced until this suit was brought, shortly after the death of plaintiff's mother.

Appellants contend, first, that the evidence does not sustain the court's finding that there was a contract to devise or convey; second, that if such a contract was made it related to the homestead of plaintiff's parents and hence was void because plaintiff's mother did not join therein; and, finally, that plaintiff's claim is barred by the statute of limitations. Appellants also contend that the improvements, for which plaintiff seeks a lien in the event specific performance. is denied, were voluntarily made by plaintiff, as a tenant in common with appellants, and hence that he cannot recover therefor.

■ The evidence appears to be sufficient to sustain the court's finding on the contract. It is true such evidence is not extensive as to the terms of the contract. This may be explained somewhat by the statute barring testimony of an interested party relative to conversations with a decedent. It may be on account of the unfamiliarity of Emma Seitz with the English language, as evidenced by her testimony. It may be due to the remoteness of time when the contract was made. Her testimony is clear and definite, however, that it was agreed by plaintiff's father that if she and plaintiff would stay on and see the parents through, as it was expressed, plaintiff would receive the property. Thus the consideration for the contract, the conditions to be performed thereunder, and the subject matter thereof were expressed in clear and unmistakable terms. It is likewise clear that plaintiff and his wife at all times relied upon the agreement and fully performed the duties imposed upon them thereby.

It has been held, on many occasions, that oral contracts to convey or devise real property will be enforced in equity when one party thereto has partially or fully performed its provisions and has no adequate remedy at law. Robertson v. Corcoran, 125 Minn. 118, 145 N. W. 812; Colby v. Street, 146 Minn. 290, 178 N. W. 599; Morrow v. Porter, 161 Minn. 396, 202 N. W. 53. We have often held that acts such as plaintiff and his wife performed here constitute adequate consideration for such an agreement. 5 Dunnell, Dig. & Supp. § 8789a, note 21.

In cases of this kind, whether such a contract was made is primarily a question of fact to be determined by the trial court in the light of evidence presented and surrounding circumstances. Here, there is evidence to sustain the trial court's finding in this respect, and we are compelled to affirm under well established rules governing this court on fact questions. Holter v. Laugen, 157 Minn. 90, 195 N. W. 639; 1 Dunnell, Dig. & Supp. § 411, and cases cited.

■ Appellants assert that even if the evidence sustains a finding that such an oral contract was made, it is nevertheless void under the homestead statute, Minn. St. 1941, § 507.02 (Mason St. 1927,

§ 8340), which provides that no sale or alienation of the homestead shall be valid without the signatures of both husband and wife. Assuming, as appellants contend, that the contract involved constitutes a sale or alienation of homestead property as contemplated by said statute, nevertheless it seems definite that the statute cannot now be invoked after full performance of the contract by plaintiff and after acceptance of the benefits of such performance by his parents with full knowledge of the agreement. To hold otherwise would be to permit a gross fraud upon plaintiff, a result, we are confident, never intended by his parents. Lucy v. Lucy, 107 Minn. 432, 120 N. W. 754, 131 A. S. R. 502; Bozich v. First State Bank, 150 Minn. 241, 184 N. W. 1021; Hanson v. Fiesler, 49 S. D. 442, 452, 207 N. W. 449, 452. As stated in the latter case:

"Neither the homestead statute nor the statute of frauds should become a shield for fraud.

"In this case the court has found on sufficient evidence that the contract was made as alleged, and was fully performed by plaintiff. The contract gave to Benedict Thompson and his wife the full benefit of their homestead right. They had no property except this almost entirely unimproved homestead. They were too old and feeble to work. Plaintiff furnished under his contract support for Mrs. Thompson until her death seven years after the contract was made. Besides making the request that plaintiff return, support them, and have the farm, she accepted the full benefits of her husband's agreement for seven years. During all this time she must have had full knowledge of what that agreement was. We think she would be estopped from now questioning the agreement, if she were living. Centerville Township v. Jenter, 25 S. D. 314, 126 N. W. 575; Ford v. Ford, 24 S. D. 644, 124 N. W. 1108; Kothe v. Berlin Township, 19 S. D. 427, 103 N. W. 657; Engholm v. Ekrem, 18 N. D. 185, 119 N. W. 35."

■ Appellants assert, however, that there is no evidence to indicate that plaintiff's mother was a party to the agreement or had knowledge thereof. In this we believe appellants are in error.

There is ample evidence to sustain the trial court's finding that she had knowledge of the agreement and ratified and confirmed it. At various times it was discussed in her presence, and she manifested familiarity with its terms and conditions and indicated her acquiescence therein. She received the benefits of plaintiff's full performance thereof.

The conduct of the parents as above indicated would have estopped either of them in their lifetimes from asserting the invalidity of the agreement or invoking § 507.02, whether the agreement be regarded as a contract to devise or a contract to convey.

4. It follows that appellants, claiming title through their grandparents, are likewise estopped by such conduct from invoking the homestead statute. As expressed in Bausman v. Eads, 46 Minn. 148, 155, 48 N. W. 769, 24 A. S. R. 201: "A minor may be estopped by the acts and conduct of the ancestor through whom he claims title." See also 31 C. J. S., Estoppel, p. 399, § 132, and cases cited.

■ Appellants assert that plaintiff's action matured immediately upon the death of his father in 1914 and hence is now barred by Minn. St. 1941, § 541.05 (Mason St. 1927, § 9191). We do not agree with this contention. The terms of the agreement provided that plaintiff would receive the property, not upon the death of the father, but upon the death of the survivor of his parents, and then only in the event he had performed his part of the contract by taking care of them during their lives. Had he sued for specific performance at the time of his father's death, his suit would have been premature, since he then could not show complete performance. Under such circumstances, it was incumbent upon him to withhold suit until he had fully performed the contract by taking care of both of them throughout their lives. This he did, and within six years thereafter instituted this action. 5 Dunnell, Dig. § 8797; Wold v. Wold, 138 Minn. 409, 165 N. W. 229.

In view of the affirmance of the findings as aforesaid, it is unnecessary to discuss the liabilities involved in making improvements upon the premises.

Judgment affirmed.