Harold H. DVORAK, Appellant,

v.

Blayne E. MARING, et al., Respondents.

No. 49396.

Supreme Court of Minnesota.

Nov. 9, 1979.

O'Brien, Ehrick, Wolf, Deaner & Downing and Lawrence D. Downing, Rochester, for appellant.

Roger E. Petersen, Rochester, for respondents.

Heard before ROGOSHESKE, PETERSON, and KELLY, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

Plaintiff, Harold H. Dvorak, appeals from the judgment of the district court entered pursuant to an order granting defendants Blayne E. and Nadine A. Maring summary judgment in plaintiff's action for specific performance of an earnest money contract or, in the alternative, for damages. The issues raised are whether a spouse's endorsement on an earnest money check constitutes a signature within the contemplation of Minn.Stat. § 507.02 (1978) prohibiting alienation of homestead property without the signatures of both husband and wife; whether the conduct of Nadine Maring was sufficient to estop her from denying the validity of the contract; and whether, if the contract is unenforceable, plaintiff can recover damages from Blayne Maring for breach of contract to obtain his wife's signature on a warranty deed and from both defendants for intentional or negligent misrepresentation. We conclude that the district court correctly granted summary judgment in favor of the Marings on all issues and accordingly affirm.

During the events that resulted in this lawsuit, defendants Blayne and Nadine Maring owned a home in Rochester in which they resided with their three children. Mr. Maring was employed at IBM in Rochester. In January 1977, his employer informed him that he was being transferred to Boca Raton, Florida. In March 1977, plaintiff's wife, Mary Dvorak, called Mrs. Maring and asked whether their house was for sale. Although Mrs. Maring responded that she was not sure they wanted to sell, the Dvoraks, after looking at the house, eventually offered to purchase it for $79,500.

On March 11, 1977, Mr. Maring accepted the Dvoraks' offer, and on the same day Mr. Maring and Mr. Dvorak went to the office of an attorney they agreed upon to draw up the necessary papers for the sale. While at the office, Mr. Dvorak and Mr. Maring executed an earnest money contract for the sale of the Marings' home and Mr. Dvorak gave Mr. Maring a check for $1,000 made out to both Blayne and Nadine Maring. The contract called for Mr. Maring to obtain his wife's signature on the warranty deed. Mrs. Maring never did sign the contract because she was reluctant to do so [1] and because Mr. Maring did not think it was necessary; she did, however, endorse the $1,000 check and deposit it in the Marings' joint checking account.

From the time they learned of the transfer, the Marings began preparing to move to Florida. They looked into schools for their children in Boca Raton, held a garage sale, made a downpayment on a lot in Boca Raton and signed a contract for the construction of a home, and obtained a check from IBM for the equity in their Rochester home by assigning to IBM the proceeds from its sale. The Marings intended to use the amount advanced by IBM for the construction of their new home in Florida.

On June 1, 1977, the Marings learned that IBM was cancelling the move to Florida. On June 2, Mr. Maring called Mr. Dvorak and told him that he and his wife were not moving and wanted to keep the house. Mr. Dvorak said he would have to think about it, and 2 days later he told Mr. Maring that he still wanted the house. Subsequent efforts by Mr. Maring to settle the matter were unsuccessful. On June 15 Mr. Maring tendered return of the downpayment, and on June 18 Mr. Dvorak filed suit.

Minn.Stat. § 507.02 (1978) provides in part: "If the owner be married, no mortgage of the homestead, except for purchase money unpaid thereon, nor any sale or other alienation thereof shall be valid without the signatures of both husband and wife." This

---

1. Mrs. Maring stated that she did not sign the contract because she had not fully accepted the contemplated move to Florida. She did not want to move but at the same time she did not want to refuse to go because it would adversely affect her husband's career.

statute evidences the clear and unambiguous legislative policy of ensuring a secure homestead for families. *Holden v. Farwell, Ozmun, Kirk & Co.,* 223 Minn. 550, 27 N.W.2d 641 (1947). The plaintiff argues that Mrs. Maring's endorsement of the earnest money check represents a signature that satisfies the requirements of § 507.02.

▮ We have held many times that without the signatures of both spouses a conveyance of homestead property is not merely voidable but is void and the buyer acquires no rights whatsoever. *E. g., Anderson v. First National Bank of Pine City,* 303 Minn. 408, 411, 228 N.W.2d 257, 259 (1975); *Marr v. Bradley,* 239 Minn. 503, 507, 59 N.W.2d 331, 333 (1953). While § 507.02 does not specify where the signatures of the husband and wife must be located, the trial court was correct in concluding that the requirements of the statute can only be satisfied if both parties sign a contract for sale or join in a deed conveying the homestead property. In this case Mrs. Maring did not sign the contract for sale, and neither spouse executed a deed. The only signature of Mrs. Maring was on the earnest money check. The trial court correctly interpreted and applied the statute, reasoning:

> This Court feels that a check given in ordinary form and without reference to the essential terms of the contract of sale constitutes only an obligation on the part of the drawer to pay money and contains no reciprocal promise to convey land on the part of the payees. As such it is not a "sale" or "alienation" of the homestead and the fact that it bears the signatures of both spouses is insufficient to satisfy Minn.Stat. § 507.02 (1976).

**2.** The relevant portion of Minn.Stat. § 519.06 (1978) provides: "No contract between husband and wife relative to the real estate of either, or any interest therein, nor any power of attorney or other authority from the one to the other to convey real estate, or any interest therein, shall be valid * * *."

**3.** A North Dakota court explained how estoppel works in cases involving a conveyance of the homestead:

▮ Plaintiff argues next that even if the § 507.02 signature requirement is not satisfied by a spouse's endorsement of the earnest money contract, a nonsigning spouse can ratify or confirm an earnest money contract signed by the other spouse. In a previous decision we held that there cannot be a ratification of a contract for the sale of a homestead that is void due to the lack of a spouse's signature. *Anderson v. First National Bank of Pine City,* 303 Minn. 408, 228 N.W.2d 257 (1975). The rationale for this rule is that Minn.Stat. § 519.06 (1978),[2] which precludes one spouse from acting as the agent of the other in the sale of real estate, prevents a spouse from ratifying a land sale contract signed by the other spouse, since the spouse cannot ratify an act he or she could not have originally authorized. Because of this rule, we conclude that plaintiff's contention that Mrs. Maring ratified the contract by endorsing the earnest money check is without merit.

Plaintiff's third claim is that Mrs. Maring is estopped from denying the validity of the earnest money contract. We have recognized that, even though great importance is attached to the homestead right, under certain circumstances a party may be estopped from denying a sale of the homestead even if the statutory requirements are not met.[3] *Bullock v. Miley,* 133 Minn. 261, 158 N.W. 244 (1916). The plaintiff cites several Minnesota cases where estoppel has been successfully used to enforce a conveyance of homestead property that did not meet the statutory requirements. *E. g., Seitz v. Sitze,* 215 Minn. 452, 10 N.W.2d 426 (1943); *Fuller v. Johnson,* 139 Minn. 110, 165 N.W. 874 (1917). In denying the plaintiff's estoppel claim, the trial court correctly recognized that in the cases relied upon by the

> The doctrine is not invoked to render valid a contract which is void under * * * statutes for the benefit and protection of the homestead claimants, but it is invoked to prevent the successful perpetration of fraud by preventing wrongdoers from urging the provisions of such statutes to shield them in their tortious conduct.

*Engholm v. Ekrem,* 18 N.D. 185, 194, 119 N.W. 35, 38 (1908).

plaintiff the finding of estoppel resulted from the nonsigning spouse's consent and full knowledge of the transaction, retention of benefits, and delivery of possession to the grantee, who typically took possession and made valuable improvements. The trial court concluded that the plaintiff was unable to make a similar showing in this case:

> It is undisputed * * * that Plaintiff's performance was minimal, that possession of the real estate was not delivered, and that no valuable improvements were made on the property by Plaintiff. This Court does not feel that the substantial grounds of prejudice or change of position upon which an estoppel must rest are present in this case.

■ We have recognized that detrimental reliance by the party seeking relief is critical to a finding of estoppel. *Leegaard v. Universal Underwriters Ins. Co.*, 255 N.W.2d 819, 822 (Minn.1977). It is true that the Marings' actions in agreeing to sell the house, preparing for the move to Florida, and accepting a $1,000 payment indicated that they fully intended to sell the house and made it reasonable for the Dvoraks to assume that they would be able to purchase the house. Nevertheless, the Dvoraks' reasonable expectation of purchasing the house does not constitute sufficient detrimental reliance to support a claim of estoppel. As the trial court and the defendants point out, the Dvoraks' only performance consisted of signing the earnest money contract and paying $1,000 of the purchase price of over $70,000, which was returned. Moreover, the Dvoraks did not sell their own home nor take possession or make any improvements on the Marings' home. Thus, while the Dvoraks may have had a legitimate expectation of purchasing the house, they did not change their position in reliance on that expectation and, as a result, are not able to show the detrimental reliance necessary for estoppel.

■ Plaintiff finally asserts that, if the earnest money contract is unenforceable, he should be able to recover damages from Mr. Maring individually for his failure to obtain his wife's signature on a warranty deed as required by the contract, and from Mr. and Mrs. Maring jointly for their negligent or intentional misrepresentation[4] of their intent to comply with the terms of the contract. The trial court originally reserved the plaintiff's damage claims for trial. Subsequently, however, the defendants moved for summary judgment on these claims. The trial court deferred decision to permit discovery, and after extensive discovery the court found no issues of material fact which would support findings of negligent or intentional misrepresentation. With regard to plaintiff's attempt to recover from Blayne Maring individually for his failure to obtain his wife's signature on a warranty deed, we reaffirm our longstanding rule that a spouse who contracts to convey the homestead in an instrument not signed by his or her spouse is not liable in damages to the purchaser for the contract's nonperformance. *Weitzner v. Thingstad*, 55 Minn. 244, 56 N.W. 817 (1893); *see also Schultz v. Stiernagle*, 270 N.W.2d 269 (Minn.1978). With regard to the claims of negligent and intentional misrepresentation against both Mr. and Mrs. Maring, we agree with the trial judge's conclusion that the undisputed evidence does not support plaintiff's claims.

We recognize, of course, that since the Marings intended in good faith to sell their house they prevail fortuitously by using the homestead statute to avoid their bargain. To address the equities in this case, however, ignores the basic policy objective embodied in § 507.02 of protecting the alienation of the homestead without the willing signatures of both spouses. We are unwilling to grant specific performance where the strict requirements of the statute are not satisfied, since to do so would undermine this statutory protection of the homestead.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.

---

4. While the plaintiff's complaint also alleged fraud, we see no distinction between a theory of recovery based on intentional misrepresentation and one based on fraud. *See Vandeputte v. Soderholm*, 298 Minn. 505, 216 N.W.2d 144 (1974).