# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 08-2100

_____

Joel Karnitz; Tanya Karnitz,

        Appellees,

    v.

Wells Fargo Bank, N.A.,

        Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of Minnesota.

_____

Submitted: February 12, 2009
Filed: July 17, 2009

_____

Before WOLLMAN, HANSEN, and BYE, Circuit Judges.

_____

HANSEN, Circuit Judge.

Wells Fargo Bank, N.A. (Wells Fargo) appeals from the district court's award of summary judgment in favor of Joel and Tanya Karnitz, who brought this action seeking a declaration that the mortgage held by Wells Fargo on their residence is invalid under Minnesota Statute § 507.02. We agree with Wells Fargo that given the undisputed facts of this case, the Karnitzes should be estopped from relying on § 507.02 to challenge the validity of the mortgage. We therefore reverse the district court's judgment and remand with instructions to enter judgment in favor of Wells Fargo.

I.

In 2001, the Karnitzes built their home on land they purchased in LaPorte, Minnesota. They financed construction of the house through a short-term construction loan from Centennial National Bank. Both Joel and Tanya signed the loan documents and a mortgage in favor of Centennial. Upon completion of the house, the Karnitzes sought to pay off the construction loan with a traditional 30-year mortgage loan, which Centennial arranged through Wells Fargo. Joel signed a note for $136,800 payable to Wells Fargo and executed a mortgage on the property in favor of Wells Fargo. The Karnitzes used the Wells Fargo loan proceeds to pay off the construction loan, thereby securing a release of the Centennial mortgage.

Tanya did not sign the Wells Fargo loan documents or the new mortgage because Wells Fargo never asked her to sign any of the documents. Tanya testified in her deposition that she knew Joel was seeking a loan and mortgage from Wells Fargo to pay off the Centennial construction loan; that she knew the loan would result in a mortgage in favor of Wells Fargo; that she approved of Joel obtaining the loan and granting the mortgage to Wells Fargo; and that she wanted to obtain the loan in exchange for the mortgage.

On April 17, 2005, the Karnitzes filed for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code. They listed their house as secured by a first mortgage in favor of Wells Fargo and listed the Wells Fargo loan as a joint obligation. The Karnitzes received a discharge in bankruptcy on August 8, 2005. Shortly thereafter, they fell behind on their mortgage payments to Wells Fargo. Wells Fargo initiated foreclosure proceedings and foreclosed on the house on January 17, 2007.

In the meantime, Joel learned that Minnesota law requires a mortgage on a married couple's homestead to be signed by both spouses under Minnesota Statute § 507.02. The Karnitzes took the position during the foreclosure proceedings that the

mortgage in favor of Wells Fargo was invalid because Tanya had not signed it. They brought this action in Minnesota state court seeking a declaration to that effect, and Wells Fargo removed the case to federal court based on diversity jurisdiction. The district court concluded that the unambiguous language of § 507.02 required Tanya's signature on the mortgage, and without her signature, the mortgage was void *ab initio*. The district court rejected Wells Fargo's estoppel arguments and granted summary judgment in favor of the Karnitzes.

## II.

We review *de novo* both the district court's grant of summary judgment as well as its interpretation of state law. MSK EyEs Ltd. v. Wells Fargo Bank, 546 F.3d 533, 540 (8th Cir. 2008). The parties agree that the underlying facts are undisputed. Under Minnesota law, "[t]he application of equitable estoppel presents a question of law." Minnesota v. Ramirez, 597 N.W.2d 575, 577 (Minn. Ct. App. 1999).

With exceptions not here relevant, § 507.02 of the Minnesota Statutes provides: "If the owner is married, no conveyance of the homestead . . . shall be valid without the signatures of both spouses." A conveyance under § 507.02 includes a mortgage. See Minn. Stat. § 507.01. A conveyance that fails to meet these statutory requirements is void and cannot be ratified. See Dvorak v. Maring, 285 N.W.2d 675, 677 (Minn. 1979) (explaining that "there cannot be a ratification of a contract for the sale of a homestead that is void due to the lack of a spouse's signature" because of the interplay with Minn. Stat. § 519.06 concerning when a spouse can and cannot act as the other spouse's agent).

Despite the plain and unequivocal language of the statute, the Minnesota Supreme Court has "recognized that, even though great importance is attached to the homestead right, under certain circumstances a party may be estopped from denying a sale of the homestead even if the statutory requirements are not met." Id. The

purpose behind the statute is to "'ensur[e] a secure homestead for families,'" Wells Fargo Home Mortg., Inc. v. Newton, 646 N.W.2d 888, 895 (Minn. Ct. App. 2002) (quoting Dvorak, 285 N.W.2d at 677), and to protect against "the alienation of the homestead without the willing signature of both spouses," Dvorak, 285 N.W.2d at 678. In certain circumstances when the purpose of the statute is not at risk, the Minnesota courts have applied estoppel to prevent a party from challenging the validity of a conveyance of a homestead. In its most recent discussion of the equitable estoppel doctrine in this specific context, the Minnesota Supreme Court stated, in addressing whether a nonsigning spouse should be estopped from asserting the protections of § 507.02 to void a conveyance by her spouse, that estoppel applies where (1) the nonsigning spouse consents to and has prior knowledge of the transaction, (2) the nonsigning spouse retains the benefits of the transaction, and (3) the party seeking to invoke estoppel has sufficiently changed its position to invoke the equities of estoppel. See Dvorak, 285 N.W.2d at 677-78 (discussing Seitz v. Sitze, 10 N.W.2d 426 (1943); Fuller v. Johnson, 165 N.W. 874 (1917)). All three factors must be present, cf. Anderson v. First Nat'l Bank of Pine City, 228 N.W.2d 257, 260 (Minn. 1975) (estoppel not appropriate where husband did not learn that wife forged his signature until after the transaction was complete (such that the first factor was not met), even though he did retain the benefits of the mortgage), and the third factor is critical, Dvorak, 285 N.W.2d at 678 ("[D]etrimental reliance by the party seeking relief is critical to a finding of estoppel.").

Although the Minnesota Supreme Court refused to apply estoppel to the facts of the case in Dvorak because the purported transferee would not be substantially prejudiced by voiding the conveyance, see id. (noting that the only performance on the buyers' part was payment of $1,000 in earnest money, which was returned; the buyers had not sold their own home or taken possession of the disputed property), we read Dvorak as definitive authority on the factors necessary to apply equitable estoppel under Minnesota law to preclude a party from relying on § 507.02 to avoid a conveyance. See also Bullock v. Miley, 158 N.W. 244, 245 (Minn. 1916) (applying

estoppel where both spouses intended to alienate the homestead and gave expression to that intent and the party to whom the improper conveyance was made acted in reliance on the validity of the conveyance such that the denial of its validity four years later would work a manifest injustice to him).

Applying the equitable estoppel factors articulated in <u>Dvorak</u>, it is undisputed that Tanya knew of and intended to mortgage the homestead to Wells Fargo prior to its execution; she retained the benefit of that mortgage by using the proceeds to pay off the construction loan (which she had signed and was obligated to repay) and to obtain a release of the construction loan's accompanying mortgage; and Wells Fargo significantly changed its position in reliance on the validity of its mortgage by lending over $130,000 in exchange for a lien on the property. The Karnitzes do not dispute the existence of these facts. Further, they did not dispute the validity of the mortgage until four years after it was executed and they were facing foreclosure because they could not keep up with the obligations of the accompanying note. Under these facts, the Karnitzes should be estopped from now claiming that the mortgage is void in order to keep their home, on which they both intended to grant Wells Fargo a valid mortgage, without paying for it.[1] Strict compliance with the statute in these circumstances does not further the policy behind the statute; rather, it flaunts it by converting what the Legislature intended as a shield into a sword. <u>See</u> <u>Dvorak</u>, 285 N.W.2d at 677 n.3 ("'The doctrine [of equitable estoppel] is not invoked to render valid a contract which is void under . . . statutes for the benefit and protection of the homestead claimants, but it is invoked to prevent the successful perpetration of fraud by preventing wrongdoers from urging the provisions of such statutes to shield them in their tortious conduct.'" (quoting <u>Engholm v. Ekrem</u>, 119 N.W. 35, 38 (N.D. 1908)).

---

[1]According to the parties, if the mortgage is invalid, the resulting unsecured note to Wells Fargo for the balance owed on the house would be discharged as part of a reopened bankruptcy estate.

The district court in this case recognized that a party may be estopped from asserting the invalidity of the conveyance based on the lack of a spouse's signature, but rejected the estoppel defense based on a line of Minnesota cases holding that "an oral promise to give a mortgage on a couple's homestead by one spouse does not give rise to estoppel." (Add. at 5 (citing <u>Kingery v. Kingery</u>, 241 N.W. 583, 584-85 (Minn. 1932); <u>Butler Bros. Co. v. Levin</u>, 207 N.W. 315, 316 (Minn. 1926)). The district court's reliance on this line of cases is misplaced. The point of the holding in <u>Butler Bros.</u> was that estoppel could not be based on a promise of future conduct. In that case, a bank tried to foreclose on a homestead where only the husband signed the mortgage. The wife promised to make sure the husband's debt would be paid, and, if it was not, she would then sign the mortgage. <u>Butler Bros.</u>, 207 N.W. at 316. When the wife failed to make good on the debt and still refused to sign the mortgage, the creditor argued estoppel based on its agreement to stop collections against the husband in detrimental reliance on the wife's promise. The court rejected the estoppel argument because the wife's promise "related wholly to the intention of the promisor with respect to *future action*. It did not relate to present or past conditions or rights. The law is that a promise, representation, or concealment, in order to constitute an estoppel, even when relied upon, must 'have reference to a present or past state of things.'" <u>Id.</u> (emphasis added) (quoting Bigelow on Estoppel, 636). The case at bar does not involve a promise at all, oral or otherwise. Further, there is no indication in <u>Butler Bros.</u> that the wife had prior knowledge or had otherwise acquiesced in the contested mortgage that lacked her signature. In fact, the court noted that estoppel may be held against a nonsigning spouse in the case of a homestead, distinguishing <u>Osman v. Wisted</u>, 80 N.W. 1127 (1899), on the basis that estoppel was proper there where the wife acquiesced in and ratified the designation of the homestead. <u>Butler Bros.</u>, 207 N.W. at 316. The district court here erred in focusing on the effect of a nonexistent oral promise without considering the factors described in <u>Dvorak</u>.

We recognize that the doctrine of equitable estoppel generally involves some type of misrepresentation or at least negligent culpability on the part of the person

against whom it is claimed.  See, e.g., Birch Publ'ns, Inc. v. RMZ of St. Cloud, Inc., 683 N.W.2d 869, 873-74 (Minn. Ct. App. 2004) (describing equitable estoppel as arising "when 'one by his acts or representations, or by his silence when he ought to speak, intentionally or through culpable negligence, induces another to believe certain facts to exist, and such other rightfully acts on the belief so induced'" such that he is prejudiced (quoting Transam. Ins. Group v. Paul, 267 N.W.2d 180, 183 (Minn. 1978))).  Despite this general statement of the equitable estoppel doctrine, the Minnesota cases that apply estoppel in the specific context of the homestead signature requirement of § 507.02 have found such a "culpability" requirement satisfied by the nonsigning spouse's prior knowledge and agreement of the conveyance coupled with the retention of the benefits of the conveyance.  For example, in Seitz, a son took care of his mother for several years in exchange for his father's promise that he would receive their homestead upon their deaths.  When the father's other heirs challenged the conveyance to the son for failure to comply with the homestead signature requirement, the Minnesota Supreme Court used the doctrine of equitable estoppel to hold that § 507.02 "cannot now be invoked after full performance of the contract by [the son] and after acceptance of the benefits of such performance by his parents with full knowledge of the agreement."  Seitz, 10 N.W.2d  at 429.  In Bullock, a husband was estopped from claiming title to the homestead he had sold where the original conveyance lacked his wife's signature.  The Minnesota Supreme Court applied estoppel because "both plaintiff and his wife intended to convey the homestead . . . and believed that they had done so; [] no offer to return the consideration received for the homestead or any part thereof has ever been made; and [] plaintiff is seeking to recover the homestead without returning any part of such consideration."  Bullock, 158 N.W. at 245.  The Minnesota Supreme Court applied estoppel in these cases despite the absence of any type of misrepresentation or inducement.

The facts of Bullock are strikingly similar to the facts here.  Both of the Karnitzes intended to convey a mortgage to Wells Fargo; they have made no offer to return the consideration received; and they now seek–several years later–to retain their

homestead without paying for it.  Fulfilling our duty to apply state law as we believe the highest court of the state would apply it, see Leonard v. Dorsey & Whitney LLP, 553 F.3d 609, 612 (8th Cir. 2009), we are bound to follow the Minnesota Supreme Court cases most directly on point, particularly Seitz, Bullock, and Dvorak.  Equitable estoppel is appropriate under the facts of this case, and the district court erred in concluding otherwise.

III.

The district court's judgment granting summary judgment to the Karnitzes is reversed, and the case is remanded for entry of summary judgment in favor of Wells Fargo.

Bye, Circuit Judge, dissenting.

Because the majority fails to explain how Wells Fargo relied to its detriment on Tanya Karnitz' misconduct or silence, I dissent.

The majority correctly notes that "detrimental reliance by the party seeking relief is critical to a finding of estoppel."  Dvorak v. Maring, 285 N.W.2d 675, 678 (1979); ante at 4.  The majority fails, however, to explain how Wells Fargo relied to its detriment on anything said or done *by the Karnitzes*.  Instead, the majority simply states that Wells Fargo relied "on the validity of its mortgage by lending over $130,000 in exchange for a lien on the property."  Ante at 5.  The problem with such an analysis is that Minnesota case law requires reliance on the conduct of the party seeking to disavow the transaction, not merely reliance on the validity of the transaction itself.  See Ridgewood Dev. Co. v. State, 294 N.W.2d 288, 292 (1980) ("As a general rule, for equitable estoppel to lie, the plaintiff must demonstrate that the defendant, through his language or conduct, induced the plaintiff to rely, in good faith, *on this language or conduct* to his injury, detriment or prejudice.") (emphasis

-8-

added).  Here, Wells Fargo admits it had no contact with Tanya Karnitz prior to closing, and that nothing the Karnitzes did, said, or did not say caused Wells Fargo to lend the money or forego obtaining her signature on the necessary documents. Thus, Wells Fargo did not rely to its detriment on conduct by either of the Karnitzes in choosing to lend $135,000.

Tanya Karnitz did remain silent after the money was lent, which positioned Wells Fargo to operate for four years under the mistaken assumption its lien on the property was valid.  While this conduct could form the basis for equitable estoppel, Wells Fargo did not rely to its detriment on Tanya Karnitz's continued silence.  Thus, this case is materially different from the cases upon which the majority relies.  In Bullock v. Miley, a case which the majority asserts is "strikingly similar" to the present case, the non-signing spouse allowed the purchaser to take possession of the property for several years without objection, and the purchaser relied to his detriment on the seller's silence *by making improvements to the property*.  158 N.W. 244, 263-64 (1916).  Notably, the purchaser had "paid all the taxes thereon, and ha[d] placed improvements of the value of more than $1,000 upon the [property], and ha[d] also placed improvements of the value of more than $1,000 upon the remainder of the farm which he would not have placed thereon had he not believed that he was the owner of [the property]."  Id. at 263-64.  Moreover, the Minnesota Supreme Court was persuaded because the seller "knew that [the purchaser] was making improvements upon the homestead in the belief that he was the owner thereof, but made no claim thereto."  Id. at 264. Thus, detrimental reliance on the spouse's alleged consent to the transaction was met not,  as the majority contends, because the spouse knew of the transaction beforehand and accepted its benefits, but because the spouse "without objection permitted [the buyer] to occupy it for four years and expend large sums for improvements and taxes."  Id.

Bullock demonstrates that the defense of equitable estoppel in cases involving Minnesota Statute § 507.02 requires more than the non-signing spouse's silence and

apparent consent prior to the transaction; in addition, the buyer must continue to rely to his detriment on the non-singing spouse's post-transaction consent. This requirement was further elucidated in <u>Sietz v. State</u>, 10 N.W.2d 426 (1943). In <u>Sietz</u>, a man entered into an agreement to care for his mother and father for the remainder of their lives and, in return, his parents agreed to transfer the property to him upon their deaths. <u>Id.</u> at 427. After they passed, other family members challenged the agreement because the son's mother was not a party to the contract. In applying equitable estoppel, the Minnesota Supreme Court focused on more than the mother's knowledge and apparent consent to the transaction. Critically, the court focused on the mother's post-contract silence *during which time the son continued to perform his part of the contract*. The son relied on his mother's after-the-fact silence and apparent consent to the contract by continuing to perform his obligations under the contract. <u>See</u> <u>id.</u> at 428 ("During all this time plaintiff purchased all food and clothing for his mother, paid all her medical expenses, paid all fuel bills, paid all taxes, and furnished repairs and improvements to the premises of the reasonable value of $804."). As in <u>Bullock</u>, the critical reason for applying equitable estoppel was not, as the majority asserts, that a non-singing spouse was aware of a transaction and would have consented to the transaction, but that the other party took some post-contract action in reliance upon the non-signing spouse's continued silence and consent.

This requirement is not met in the present case. Unlike the purchaser in <u>Bullock</u> – who relied on the non-signing spouse's post-contract silence and consent to possess the property for four years while making significant improvements – or the son in <u>Sietz</u> – who relied on his mother's post-contract silence and consent in continuing to perform his contractual obligations – Wells Fargo did not do anything after the transaction was completed which worsened its position, either in terms of money expended or legal rights forfeited. Wells Fargo tendered the full amount of the loan in 2002, and, though Tanya Karnitz remained silent for four years, Wells Fargo took no further action during such time frame. Thus, Wells Fargo is unable to identify any action it took to its detriment in the four years during which the Karnitzes did not

object to the validity of the mortgage. Because Minnesota cases require a party seeking to invoke estoppel in this context to demonstrate detrimental reliance on a transferor's post-contract conduct, Wells Fargo's estoppel claim necessarily fails. The majority adulterates this principle by holding that equitable estoppel is met whenever a non-signing spouse *would have* consented to the transaction and a buyer, even one who never met the non-signing spouse, believed the transaction to be valid. Because Minnesota cases require more, I disagree with the majority's analysis.

While I am not unmindful of the inequities of allowing the Karnitzes to foreswear a security interest in their home they voluntarily gave to Wells Fargo, it is important to note that the fault in this case lies with Wells Fargo, not the Karnitzes. Wells Fargo failed to obtain Tanya Karnitz's signature because of its own negligence, not, most importantly, in reliance on anything said or done by the Karnitzes. While we can fault the Kartnitzes for accepting the benefit of the mortgage and remaining silent for four years, the die was solidly cast; Wells Fargo had already tendered an unsecured loan because of its own negligence, and the Karnitzes' actions or inactions for four years did not cause them to lend additional money or take any other action to its detriment. Therefore, I would affirm the district court and hold Wells Fargo's equitable estoppel claim fails. Because the court concludes otherwise, I respectfully dissent.

_____