BYE, Circuit Judge,
dissenting.
Because the majority fails to explain how Wells Fargo relied to its detriment on Tanya Karnitz’ misconduct or silence, I dissent.
The majority correctly notes that “detrimental reliance by the party seeking relief is critical to a finding of estoppel.” Dvorak v. Maring, 285 N.W.2d 675, 678 (1979); ante at 575. The majority fails, however, to explain how Wells Fargo relied to its detriment on anything said or done by the Karnitzes. Instead, the majority simply states that Wells Fargo relied “on the validity of its mortgage by lending over $130,000 in exchange for a lien on the property.” Ante at 575. The problem with such an analysis is that Minnesota case law requires reliance on the conduct of the party seeking to disavow the transaction, not merely reliance on the validity of the transaction itself. See Ridgewood Dev. Co. v. State, 294 N.W.2d 288, 292 (1980) (“As a general rule, for equitable estoppel to lie, the plaintiff must demonstrate that the defendant, through his language or conduct, induced the plaintiff to rely, in good faith, on this language or conduct to his injury, detriment or prejudice.”) (emphasis added). Here, Wells Fargo admits it had no contact with Tanya Karnitz prior to closing, and that nothing the Karnitzes did, said, or did not say caused Wells Fargo to lend the money or forego obtaining her signature on the necessary documents. Thus, Wells Fargo did not rely to its detriment on conduct by either of the Karnitzes in choosing to lend $135,000.
Tanya Karnitz did remain silent after the money was lent, which positioned Wells Fargo to operate for four years under the mistaken assumption its lien on the property was valid. While this conduct could form the basis for equitable estoppel, Wells Fargo did not rely to its detriment on Tanya Karnitz’s continued silence. Thus, this case is materially different from the cases upon which the majority relies. *578 In Bullock v. Miley, a case which the majority asserts is “strikingly similar” to the present case, the non-signing spouse allowed the purchaser to take possession of the property for several years without objection, and the purchaser relied to his detriment on the seller’s silence by making improvements to the property. 133 Minn. 261, 263, 158 N.W. 244 (1916). Notably, the purchaser had “paid all the taxes thereon, and ha[d] placed improvements of the value of more than $1,000 upon the [property], and ha[d] also placed improvements of the value of more than $1,000 upon the remainder of the farm which he would not have placed thereon had he not believed that he was the owner of [the property].” Id. at 263-64, 158 N.W. 244. Moreover, the Minnesota Supreme Court was persuaded because the seller “knew that [the purchaser] was making improvements upon the homestead in the belief that he was the owner thereof, but made no claim thereto.” Id. at 264, 158 N.W. 244. Thus, detrimental reliance on the spouse’s alleged consent to the transaction was met not, as the majority contends, because the spouse knew of the transaction beforehand and accepted its benefits, but because the spouse “without objection permitted [the buyer] to occupy it for four years and expend large sums for improvements and taxes.” Id.
Bullock demonstrates that the defense of equitable estoppel in cases involving Minnesota Statute § 507.02 requires more than the non-signing spouse’s silence and apparent consent prior to the transaction; in addition, the buyer must continue to rely to his detriment on the non-singing spouse’s post-transaction consent. This requirement was further elucidated in Seitz v. Sitze, 215 Minn. 452, 10 N.W.2d 426 (1943). In Seitz, a man entered into an agreement to care for his mother and father for the remainder of their lives and, in return, his parents agreed to transfer the property to him upon their deaths. Id. at 427. After they passed, other family members challenged the agreement because the son’s mother was not a party to the contract. In applying equitable estoppel, the Minnesota Supreme Court focused on more than the mother’s knowledge and apparent consent to the transaction. Critically, the court focused on the mother’s post-contract silence during which time the son continued to perform his part of the contract. The son relied on his mother’s after-the-fact silence and apparent consent to the contract by continuing to perform his obligations under the contract. See id. at 428 (“During all this time plaintiff purchased all food and clothing for his mother, paid all her medical expenses, paid all fuel bills, paid all taxes, and furnished repairs and improvements to the premises of the reasonable value of $804.”). As in Bullock, the critical reason for applying equitable estoppel was not, as the majority asserts, that a non-singing spouse was aware of a transaction and would have consented to the transaction, but that the other party took some post-contract action in reliance upon the non-signing spouse’s continued silence and consent.
This requirement is not met in the present case. Unlike the purchaser in Bullock — who relied on the non-signing spouse’s post-contract silence and consent to possess the property for four years while making significant improvements— or the son in Sietz — who relied on his mother’s post-contract silence and consent in continuing to perform his contractual obligations' — Wells Fargo did not do anything after the transaction was completed which worsened its position, either in terms of money expended or legal rights forfeited. Wells Fargo tendered the full amount of the loan in 2002, and, though Tanya Karnitz remained silent for four years, Wells Fargo took no further action *579 during such time frame. Thus, Wells Fargo is unable to identify any action it took to its detriment in the four years during which the Karnitzes did not object to the validity of the mortgage. Because Minnesota cases require a party seeking to invoke estoppel in this context to demonstrate detrimental reliance on a transferor’s post-contract conduct, Wells Fargo’s estoppel claim necessarily fails. The majority adulterates this principle by holding that equitable estoppel is met whenever a non-signing spouse would have consented to the transaction and a buyer, even one who never met the non-signing spouse, believed the transaction to be valid. Because Minnesota cases require more, I disagree with the majority’s analysis.
While I am not unmindful of the inequities of allowing the Karnitzes to foreswear a security interest in their home they voluntarily gave to Wells Fargo, it is important to note that the fault in this case lies with Wells Fargo, not the Karnitzes. Wells Fargo failed to obtain Tanya Karnitz’s signature because of its own negligence, not, most importantly, in reliance on anything said or done by the Karnitzes. While we can fault the Kartnitzes for accepting the benefit of the mortgage and remaining silent for four years, the die was solidly cast; Wells Fargo had already tendered an unsecured loan because of its own negligence, and the Karnitzes’ actions or inactions for four years did not cause them to lend additional money or take any other action to its detriment. Therefore, I would affirm the district court and hold Wells Fargo’s equitable estoppel claim fails. Because the court concludes otherwise, I respectfully dissent.