THE FARWELL BRICK, TILE & CLAY SHINGLE COMPANY (LIMITED) v. EDWARD McKENNA AND JAMES McKENNA.

*Husband and wife—Homestead—Abandonment—Evidence.*

A wife who abandons her husband and her home without legal cause —that is, not under circumstances that would entitle her to a divorce—does not carry with her her marital rights in the homestead.[1]

So *held*, where a husband and wife removed from their homestead to a neighboring village, and, after residing there for about two years, the wife left her husband, and refused to live with him, under circumstances entitling him to a divorce on the ground of desertion after the expiration of the statutory period. Four years after such desertion the husband, who had resumed the occupancy of the land, sold a portion of it, and deposited a deed in *escrow*, the purchaser retaining $200 of the purchase price until a release was secured of the dower interest of the wife. The wife, about two years before such sale, had written to her husband to sell the land, and just prior to said sale she conveyed it to a third party, who three days afterwards deeded it to her husband;—under which state of facts she is held to have abandoned her homestead interest.

Appeal from Clare. (Hart, J.) Argued May 12, 1891. Decided June 5, 1891.

[1] See *Stanton v. Hitchcock*, 64 Mich. 316; *Trout v. Rumble*, 82 Id. 202.

Bill to quiet title. Both parties appeal. Decree reversed, and one entered as prayed by complainant. The facts are stated in the opinion.

*Bunker & Carpenter,* for complainant, contended:

1. In support of the claim that by her acts Mrs. McKenna has estopped herself from claiming homestead rights in the land in controversy as against the complainant if she were a party to this suit, and that James McKenna can stand in no better position than she, counsel cited *Truesdail v. Ward,* 24 Mich. 117, 133, 134; *Faxton v. Faxon,* 28 Id. 159, 161; *Sebright v. Moore,* 33 Id. 92; *Norton v. Nichols,* 35 Id. 148; *Peake v. Thomas,* 39 Id. 585; *Vanneter v. Crossman,* 42 Id. 465; *Heyn v. O'Hagen,* 60 Id. 150; *Wheeler v. Smith,* 62 Id. 373; *Dickerson v. Colgrove,* 100 U. S. 578.

*C. W. Perry,* for defendants, contended:

1. The position of defendants in this cause is that the homestead rights of Mrs. McKenna in the forty-acre tract of land existed at the time of the attempted conveyance by her husband to complainant, and, if so, that such conveyance is absolutely void, and should be so declared by the Court. The constitutional limitation of a homestead is $1,500, and the statute protects the wife and family in a home to that amount. The homestead interest is for the wife and children as much as for the husband, and it can be released by the wife only to the owner of the fee. The most positive parol promise to sell the homestead, or not to claim it, is void in law, even though the consideration is ample; citing *Showers v. Robinson,* 43 Mich. 511; *Nims v. Sherman,* Id. 45; *Hayes v. Livingston,* 34 Id. 384; *Ring v. Burt,* 17 Id. 465; *Wright v. DeGroff,* 14 Id. 164.

2. How. Stat. § 7722, makes any conveyance of the homestead absolutely void unless signed by the wife, except in case of a mortgage to secure the purchase price; citing *Beecher v. Baldy,* 7 Mich. 488; *Dye v. Mann,* 10 Id. 291; *McKee v. Wilcox,* 11 Id. 358; *Ring v. Burt,* 17 Id. 465; *Fisher v. Meister,* 24 Id. 447; *Wallace v. Harris,* 32 Id. 380; *Insurance Co. v. Sewing Machine Co.,* 41 Id. 131; *Sherrid v. Southwick,* 43 Id. 515.

3. If Mrs. McKenna went away with no intention of abandoning a known right, there could be no abandonment; citing *Showers v. Robinson,* 43 Mich. 502; *Bunker v. Paquette,* 37 Id. 79.

GRANT, J. Defendant Edward McKenna, in 1879, owned

40 acres of land, known as the S. W. ¼ of S. E. ¼ of section 24, in township 17 N., range 5 W., Clare county, Mich. He and his wife lived upon the premises until the fall of 1882. They had no children. They left the premises in 1882, and removed to a neighboring village, where they lived for about two years, when she left her husband, and has not since lived with him. Edward subsequently returned, and occupied this land until he deeded 32 acres of it to complainant. About 12 acres were cleared, and Edward lived in a small building erected thereon. The rest of the land was wild, partly swamp and partly timbered.

On March 23, 1888, the complainant made a parol agreement with Edward for the purchase of 32 acres of this land, on which were deposits of clay. Edward made out the deed, which was deposited in escrow. The money was paid April 21, 1888, except $200, which was to be retained until Edward procured from his wife a release of her dower interest. Complainant took possession of the land in March, and erected buildings and machinery for the manufacture of brick, tile, and shingles. At the commencement of this suit it had expended $3,700, and at the time of the hearing its entire investment amounted to about $7,000. September 21, 1888, Edward and his wife conveyed the entire 40 acres by quitclaim deed to defendant James McKenna, who immediately thereafter instituted an action of ejectment against complainant to recover possession. This deed was made without consideration, and for the sole purpose of having James institute proceedings to recover the entire premises, and, if successful, to reconvey them to Edward and his wife. Upon the execution of the deed to complainant, Edward fenced in his eight acres, and erected a new house thereon.

The sole question in the case is, did Elizabeth McKenna,

the wife of Edward, have homestead rights in these premises? The prayer of the bill is for a perpetual injunction of the ejectment suit, and the release by James McKenna of his title to the 32 acres. The circuit court found the value of the 40 acres at the time of the deed to complainant to be $1,800, and gave to the defendants the east half and to the complainant the west half. Both complainant and defendants appeal.

The wife had not occupied these premises for six years. She had left her husband for four years, and refused to live with him. She alleges no legal excuse for leaving him, and under the record here made he would have been entitled to a divorce on the ground of desertion. The sole reason given by her for leaving him, using her own language, was: "Because my home was made unpleasant on account of liquor." There is no evidence of cruelty, or that he was an habitual drunkard. She testified that he had not drank any for two or three years, and perhaps longer. Still she had not returned to him, although it appears that he desired she should. She had stated to others that she would never live on the land again, and that her husband could do with it as he saw fit. On June 13, 1886, she wrote to her husband a letter in which she said:

"You know that I will never live with you if you ever taste any kind of liquor. Now, the best thing you can do is to go somewhere and settle, and make sure that you can live a sober life, and I will try and forgive the past. Dr. Kelly wants to buy the place, and you can write to him, and see what he will give, and I am willing you should sell. Go to Minnesota (that is a good state), and settle. * * * There is nothing here for any one to settle for. * * * Sell the place, and go."

February 20, 1888, she executed a deed of the land to one Presley, and the deed was recorded the same day. The consideration expressed in this deed was $100. The purpose of this deed is unexplained. Three days afterwards Presley and wife reconveyed the land to her husband, but it does not appear whether this deed was recorded.

Under these facts she had abandoned her homestead interest, and retained only her right of dower. The case of *Sherrid v. Southwick*, 43 Mich. 515, cited by defendants' counsel, has no bearing upon the present case. In that case the wife was driven from her home by the misconduct of her husband, so grievous in its character that she was entitled to a divorce under the statute. Under those circumstances, she had a right to control the disposition of the homestead. But, when she abandons her husband and her home without legal cause,—that is, not under circumstances that would entitle her to a divorce, —she does not carry with her her marital rights in the homestead.

The decree of the court below must be reversed, and decree entered here according to the prayer of the bill, with costs of both courts to complainant.

The other Justices concurred.