THOMAS MURPHY v. GUSTAV RENNER and Another.[1]

November 16, 1906.

Nos. 14,868—(50).

**Homestead—Conveyance.**

> An attempted conveyance, by deed, mortgage or otherwise, of his home-
> stead by a married man without his wife's signature is void, although at
> the time she may have abandoned him and her home, and may be living an
> adulterous life.

Appeal by defendants from an order of the district court for Ren-
ville county, Powers, J., granting a motion for a new trial and deny-
ing a motion for judgment notwithstanding the instructed verdict.
Affirmed.

*John Lind, A. V. Rieke,* and *W. A. McDowell,* for appellants.
*Daly & Barnard,* for respondent.

START, C. J.

This action was brought in the district court of the county of Ren-
ville to recover from the defendants the possession of eighty acres of
land. The trial court directed a verdict for the plaintiff. The defend-
ants made a motion for judgment notwithstanding the verdict, or for a
new trial. The court made its order denying the motion for judgment,
and granting the motion for a new trial. The defendants appealed
from the order. If the evidence is practically conclusive that the
plaintiff has no interest whatever in the land then the order denying
defendants' motion for judgment was erroneous, otherwise not.

There is but little conflict in the evidence and by it, with the ad-
missions in the pleadings and the concession, for the purpose of this
appeal, in the defendants' brief to the effect that John and Bridget
Murphy were husband and wife, the following facts are established,
namely: The defendants are husband and wife, and in possession of
the land. On April 2, 1884, title to the land was in the state of Min-
nesota, and on that day it executed to John Murphy certain certifi-
cates whereby it agreed to convey the land to him upon his making
payment of the balance of the purchase price therein stipulated. He

[1]Reported in 109 N. W. 593.

was then a married man, Bridget Murphy being his wife, and with her he entered into possession of the land and they lived thereon and it became and was their homestead. Some two years thereafter, and in 1886, she abandoned her home, her husband, and their five minor children then living on the land, without any just cause. She went to Duluth and other places without any intention of ever returning to her husband and home. In 1889 she went through the form of a marriage ceremony with another man by the name of William Henry Whitney. Thereafter they lived together as husband and wife for several years. While so living together, she gave birth to a child of whom Whitney was the father. She and this spurious husband purchased a house in Duluth in which they were then living and held it for two years. How long they lived together does not clearly appear from the record, but it is clear that they so lived together until the year 1894. Some time thereafter and before John Murphy's death, she and Whitney were separated, and she assumed a new role, and went to live with a man by the name of Louis Sheppo, and was known as Mrs. Sheppo. She was so living with him at the time John Murphy died. Some seven years after she so abandoned her home and husband, and on October 6, 1893, John Murphy, who had continued to reside on the land as his homestead ever since such abandonment, assigned the state certificates so held by him, and quitclaimed the land for a valuable consideration to the grantors of the defendants. His wife never signed or executed the instruments whereby he purported to assign and convey his interest in the land, but in one of them he described himself as a widower, and in another one as an unmarried man. The grantees of John Murphy for a valuable consideration purported to convey the land to the defendant Emelie Renner, and she and her husband thereupon entered into possession of the land. John Murphy died intestate July 29, 1904, leaving him surviving his wife, Bridget Murphy, four sons, one of whom is the plaintiff, and one daughter. The plaintiff has acquired by proper conveyances the interest in the land, if any, of his mother, sister, and brothers.

It is the contention of the plaintiff that the assignment and deed whereby John Murphy attempted to convey his interest in the land to the defendant's grantors was void because it was his homestead, and his wife did not sign.

On the other hand, the defendants claim that while the land was occupied by John Murphy as a homestead, yet his wife, by her conduct as disclosed by the record, has estopped herself from asserting any homestead rights in the land, and has forfeited all right thereto.

If this were a case where Bridget Murphy was claiming homestead rights in the land as against the children of herself and John Murphy, there is ample authority to sustain the proposition that she would be estopped by her conduct from asserting such homestead rights against them. Prater v. Prater, 87 Tenn. 78, 9 S. W. 361, 10 Am. St. 623; Freeman v. Freeman, 111 Tenn. 151, 76 S. W. 825; Cockrell v. Curtis, 83 Tex. 105, 18 S. W. 436; Farwell v. McKenna, 86 Mich. 283, 48 N. W. 959; Dickman v. Birkhauser, 16 Neb. 686, 21 N. W. 396.

The question here to be determined, however, is not whether Bridget Murphy, or those claiming under her, have any homestead rights to the land, for it ceased to be the homestead of her husband some years before his death, for, after he attempted to convey it he removed therefrom and abandoned it as a homestead. The sole question to be decided is whether the deed of John Murphy was void at the time he made it for the reason that he was then a married man, the land his homestead, and his wife did not sign the deed. The hardship of this particular case must not be permitted to obscure the real question, for, if the deed was void under the facts in this case, then no title passed by the deed, John Murphy died seised of the land, and upon his death the title thereto vested in his heirs, his children, and widow. The plaintiff, one of the heirs, claims the land as heir, and as the grantee of the other heirs and his mother. Our statute, for a wise purpose, forbids the alienation of the homestead by the owner, if a married man, without the signature of his wife, and declares that no such alienation shall be valid without her signature. G. S. 1894, § 5522 (R. L. 1905, § 3456). This statute has been often construed by this court, and we invariably have held that alienation of the homestead, except to secure the purchase price thereof, by a married man without the signature of his wife is void for all purposes, not simply voidable. Barton v. Drake, 21 Minn. 299; Conway v. Elgin, 38 Minn. 469, 38 N. W. 370; Law v. Butler, 44 Minn. 482, 47 N. W. 53, 9 L. R. A. 856; Weitzner v. Thingstad, 55 Minn. 244, 56 N. W. 817. Nor is a conveyance by the husband without his wife's signature

purporting to convey the homestead rendered valid by the fact that the premises subsequently lose their character as a homestead. Alt v. Banholzer, 39 Minn. 511, 40 N. W. 830, 12 Am. St. 681.

The attempted conveyance by John Murphy in this case was made while he was occupying the land as a homestead with his children; hence, it was absolutely void without the signature of his wife, unless the fact that his wife at that time had wilfully deserted him, and was then leading an adulterous life, in some way affects the question of its validity. Upon principle, it is difficult to see how such fact can be read into the statute as an exception. The statute specifically and absolutely provides how a homestead must be conveyed, if at all, and declares that no conveyance thereof by a married man shall be valid without the signature of the wife. The homestead law is not alone for the benefit of the husband, or for the wife, but for their children as well, and the joint act of both is essential to a valid conveyance of it, each having, in legal effect, the power to veto any such conveyance by refusing to sign it. A wife may have wrongfully abandoned her husband and home and yet be desirous of having the homestead kept for her children.

In the case of Lies v. De Diablar, 12 Cal. 328, the husband was the owner of a lot which was occupied by him, his wife, and two children as a homestead. She eloped from her husband, and lived an adulterous life. After she had so abandoned her husband and home, he gave a mortgage on his homestead which was not signed by her. It was held that the mortgage was void. See also Flege v. Garvey, 47 Cal. 371, and Gleason v. Spray, 81 Cal. 217, 22 Pac. 551, 15 Am. St. 47.

In the case of Herron v. Knapp, 72 Wis. 553, 40 N. W. 149, the husband owned, and with his wife occupied, the land as a homestead. She voluntarily left him and her home, and continued to live separate and apart from him until his death. After she left him he executed, without the signature of his wife, a mortgage on the land for food and the necessaries of life. After his death, in an action by his son to set aside the mortgage and the foreclosure thereof, it was held that the mortgage was void because it was not signed by the wife. Anent the abandonment of her husband and home by the wife, the court said: "Were we to say the husband could execute a valid mortgage on the homestead without his wife's signature because she was living apart

from him, we should create an exception where the legislature has made none." We hold upon principle and authority that an attempted conveyance by deed, mortgage, or otherwise, of his homestead by a married man without his wife's signature is void, although at the time she may have abandoned him and her home, and may be living an' adulterous life.

It follows in this case that John Murphy died seised of the land in question and that the order granting a new trial should be affirmed. So ordered.