MARY ST. DENIS AND OTHERS v. EDWARD MULLEN AND OTHERS.[1]

November 30, 1923.

No. 23,608.

**Homestead—estoppel of wife and child by conduct against the equity of good faith purchaser and mortgagee.**

A married man, whose wife and children were living apart from him in a distant state, obtained a marriage license and went through a marriage ceremony with another woman, who believed his wife dead. They lived together as husband and wife until his death 29 years later. The wife knew of the marriage ceremony at the time. The husband some years later took title to a piece of land which he occupied until his death as his homestead. Two weeks before his death he made a deed of it, through a third person, to the woman with whom he lived. His wife did not join. It is *held:*

(1) The deed of his homestead by the husband, his wife not joining, was void under the statute.

(2) Upon his death the homestead descended, a life estate to his wife and the remainder in fee to his children.

(3) The wife and children, though taking the legal title, might be equitably estopped by their conduct from claiming, as against a good faith purchaser, that the deed did not pass title to the woman with whom the decedent lived, and from asserting their title against the purchaser. That the property was a homestead did not prevent the operation of an estoppel by conduct.

[1]Reported in 196 N. W. 258.

(4) The equities of the defendants, one a good faith purchaser, and the other a good faith mortgagee, are complete. To make an estoppel it is not enough to show equities. In addition such fault must be shown in the holders of the legal title that the law will not permit them to assert it against those invoking the estoppel by conduct. The policy of the law favors the protection of a good faith purchaser of the record title, though the recording statute is without application to the situation.

(5) The evidence recited in the opinion sustains the finding of an estoppel against two of the plaintiffs, the wife and one son of the decedent, who had notice of the status of the title some time before it was sold to one of the defendants, who purchased in good faith. It does not sustain the finding of an estoppel against the other plaintiffs.

Action in the district court for Rice county to cancel certain deeds and a mortgage. The answer prayed that the deeds and mortgage be declared valid. The case was tried twice before Childress, J., who made findings and ordered that the action be dismissed. From the judgment entered pursuant to the order for judgment, plaintiffs appealed. Affirmed in part; reversed in part.

*J. W. Le Crone,* for appellants.

*Charles R. Pye,* for respondents.

DIBELL, J.

Action to cancel certain deeds and to have the plaintiffs adjudged to be the owners of a farm which the deeds purported to convey. There were findings and judgment for the defendants. The plaintiffs appeal from the judgment.

The plaintiff Mary St. Denis and the defendant Gabriel St. Denis were married in the state of New York in 1862. The other plaintiffs are their children. In 1865, after the Civil War in which St. Denis served, they settled in Rice county. In 1875 Mrs. St. Denis took her children and returned to the home of her father in New York. In 1876, and again in 1881, St. Denis visited his wife and requested her to return with him to Minnesota. She refused. St. Denis was thriftless, and his wife's refusal to return with him was put upon the ground of his lack of support of herself and children,

and this was her assigned reason for leaving Minnesota and going to her father's home. In 1884 St. Denis obtained a marriage license and went through the form of a marriage ceremony with Bridget Mullen, a widow, with whom he lived until his death on April 6, 1913. A sister of Mrs. St. Denis sent her a newspaper clipping in 1884 announcing the marriage of St. Denis and Mrs. Mullen. After 1881 there was no communication with St. Denis by Mrs. St. Denis or her children. Mrs. St. Denis from the time she returned to New York in 1875, though in sore financial distress, managed to care for and rear her children, with such help as they could give, until they became self-supporting and established homes of their own. St. Denis gave no help.

In 1902 St. Denis took title to an 80-acre farm in Rice county. From then on until his death it was his homestead occupied by himself and the woman he assumed to marry in 1884. Two weeks prior to his death he made a deed of it to her through a third person. In April, 1915, she, having apparent record title, deeded to the defendant Thornby, and a month later Thornby gave a mortgage to a bank at Northfield. The controversy is between the plaintiffs and Thornby and the bank over the title to the farm.

1. The farm was the homestead of St. Denis. His deed through another to Bridget St. Denis, his wife not joining, was void. This is the declared effect of the statute. G. S. 1913, § 6957. In Rux v. Adam, 143 Minn. 35, 172 N. W. 912, the authorities are reviewed. They do not call for discussion now.

2. Upon the death of St. Denis the homestead farm descended to his wife and children, that is, to the plaintiff Mary St. Denis and her children by Gabriel, a life estate to her and the remainder in fee to the children. G. S. 1913, § 7237; Rux v. Adam, 143 Minn. 35, 172 N. W. 912, and cases cited.

3. Though the wife and children of St. Denis took the legal title upon his death, they might be equitably estopped by their conduct from claiming that the farm did not pass by the deed to Bridget St. Denis, or from asserting title to it. Such an estoppel may be invoked though the property is a homestead. Bozich v. First State Bank, 150 Minn. 241, 184 N. W. 1021, and cases cited. In Murphy

v. Renner, 99 Minn. 348, 109 N. W. 593, the right to invoke an estoppel by conduct against a homestead claim was conceded but the facts were held insufficient to create one. It has been held that an estoppel cannot be based on the covenants in a void deed. Alt v. Banholzer, 39 Minn. 511, 40 N. W. 830, 12 Am. St. 681; Starr v. Long Jim, 227 U. S. 613, 33 Sup. Ct. 358, 57 L. ed. 670. The estoppel claimed here is one by conduct and not by covenant.

4. The equities of the defendant Thornby and of the bank are complete. Thornby bought on the strength of a perfect record title. He had known Gabriel St. Denis and the woman with whom he lived for 24 years, knew that they lived on the farm, and supposed they were husband and wife as they were reputed in the community to be. He paid value, moved upon the farm, and made valuable improvements. He was as innocent of wrong or negligence as a purchaser can be. The bank was an innocent mortgagee. This is not enough. The recording act does not apply and does not protect them. They must prove an estoppel. They do not prove it by showing that they are innocent purchasers and have good equities. They must in addition show such fault in the holders of the legal title, the plaintiffs, that the law will not permit them to assert it. A rule so accurate and comprehensive as to furnish a ready solution for all cases has not been framed. Cases are hardly ever quite alike; and the varying circumstances of each must be permitted to characterize the situation and to have their natural and just effect upon the result.

It is the definite policy of the law of this state to protect innocent purchasers of an apparently good record title, though they cannot claim protection under the recording statute, as the plaintiffs in this case cannot, for it has no application. It is not averse to invoking an estoppel in aid of such protection. "The equitable doctrine of estoppel by conduct, * * * so far from being odious, is a favored doctrine of the courts. Equitable estoppel, in the modern sense, arises from the 'conduct' of a party, using that word in its broadest meaning, as including his spoken or written words, his positive acts, and his silence or negative omission to do anything." Mitchell, J., in Dimond v. Manheim, 61 Minn. 178, 181, 63 N. W. 495.

One may be estopped by his conduct from asserting his title even as against a forged deed purporting to convey it from him. Macomber v. Kinney, 114 Minn. 146, 128 N. W. 1001, 130 N. W. 851.

5. The evidence presented to us is meager. Mrs. St. Denis evidently did not anticipate living with her husband after 1881. In 1884 she knew of the marriage ceremony with Mrs. Mullen. She knew nothing of them afterwards, until she learned in August, 1913, of her husband's death in the April prior. She then had information that he left property. She was living in Cleveland where her son Frank J. lived. He learned of his father's death, he says, about the year 1914, probably at the same time that his mother did. He was advised that there was property in Minnesota. He then knew that his father had maintained marital relations with a woman other than his mother for 29 years. He, as well as his mother, must have anticipated property complications. In August, 1914, he came to Minnesota to investigate. The record title stood in Bridget St. Denis as it had stood since March, 1913. The deed from Bridget St. Denis to Thornby had not then been made. It was made on April 13, 1915, and was recorded three days later. This action was brought in September, 1916.

It must be assumed that Frank found what the situation was. He was not asked much. The record is silent as to his movements when he came to Minnesota, what he did, what he tried to find, and what he found, except that it is incidentally shown that he made a claim, still the fact in which he was interested, that is, the condition of his father's property, was the subject of easy ascertainment. If he made inquiry he found the record title in Bridget St. Denis. He found a hostile possession referable to a title claimed by her and of record in her. He found that she and his father had lived together in the community for many years as husband and wife and were universally reported to be such. It may be assumed that his mother had about such knowledge as he had. Her knowledge for 29 years of her husband's second marriage ceremony is a circumstance. Each must be held to have known that the record title might be passed to an innocent purchaser. This result did follow. If they had proceeded with some promptness Thornby would not

have parted with $4,100 in the purchase of the farm, nor have moved upon it, nor have expended money and his time and labor in improving it.

We hold that Mrs. St. Denis and Frank J. St. Denis are estopped by their conduct from asserting title against Thornby and the bank. We predicate the estoppel upon their failure to act after notice in August, 1913, of the death of St. Denis in April, 1913. It was hardly for them to say that they would rest on the legal title, recognizing no duty to others, knowing that the one under whom they claimed title had lived in Rice county as the husband of Mrs. Mullen for 29 years, giving an appearance of a perfect title wholly inconsistent with their claim which was unknown, and was unascertainable from the public records.

The testimony is silent as to any fault of the three other plaintiffs. What they knew or what they did is not disclosed. Only Mrs. St. Denis and Frank J. St. Denis testified. They testified by deposition. Their testimony appears to be frank. It was not sought to elicit from them information as to their co-plaintiffs. They were not asked anything. It was not shown that Frank came to Minnesota in their interest or communicated to them information which he acquired. Upon the evidence before us they are not estopped by their conduct.

It should be said that Mrs. Mullen was not guilty of wrong. She supposed that Mrs. St. Denis was dead when she went through the form of a marriage ceremony with St. Denis. St. Denis committed a fraud upon her. What legal consequences might flow from such fraud is not involved here and need not be discussed. It is evident that Mrs. Mullen contributed to the acquisition of the homestead both in money and work. The evidence is not definite.

The judgment is affirmed as to the plaintiffs Mary St. Denis and Frank J. St. Denis, and reversed as to the other plaintiffs.

Affirmed in part and reversed in part.