Phyllis R. CLEYS, Respondent,

Cathleen Cleys Rank, Intervenor,

v.

Florian CLEYS, individually and a personal representative of the Estate of Theodore V. Cleys, decedent, Appellant.

No. CO–84–1111.

Court of Appeals of Minnesota.

Feb. 12, 1985.

Gerald J. Brown, Brown, Andrew, Hallenbeck, Signorelli & Zallar, P.A., Duluth, for respondent.

Harold A. Frederick, Timothy E. Marx, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, for appellant.

Heard, considered and decided by PARKER, P.J., and SEDGWICK and LESLIE, Judge.

## OPINION

PARKER, Judge.

This is an action to quiet title to two parcels of real property and personal property located in Lake County, Minnesota. During their marriage Ted and Phyllis

Cleys purchased the two parcels known as "Farm Lake" and "Moose Lake" in joint tenancy. Subsequently, Phyllis and Ted separated, although the marriage was never dissolved. During the separation Ted operated a resort at the Moose Lake property.

After discovering he had cancer in 1981, Ted attempted to convey his interest in the properties to his brother, Florian Cleys. Ted also prepared a will leaving his entire testamentary estate to his brother without making provision for his wife or emancipated daughter, Cathleen.

After Ted's death, Phyllis and Cathleen sought to quiet title to the properties. Florian counterclaimed for contribution for payments made in connection with those parcels.

The trial court found Ted's actions effective only to sever the joint tenancy and awarded interests in the properties accordingly. The court denied Florian's claim for contribution but found Ted had made a valid intervivos gift of the Moose Lake personal property to him.

Florian appeals, and Phyllis and Cathleen raise additional issues by notice of review. We affirm.

## FACTS

In 1967 Theodore V. Cleys (Ted) and Phyllis R. Cleys (Phyllis), a married couple, purchased a house and land in Lake County, Minnesota (the "Farm Lake" property), and moved there with their daughter, Cathleen. The property was purchased in joint tenancy and later mortgaged.

In 1970 Ted and Phyllis purchased Tanglewood Trails Resort on Moose Lake (the "Moose Lake" property). This property was purchased in joint tenancy on a contract for deed.

Phyllis and Ted separated in 1973 but never divorced. Phyllis became self-supporting and never returned to the properties.

Meanwhile, Ted established a pattern of living at the resort during the tourist season, at Farm Lake for a week or two

during the late fall and early spring, and in his mother's home in Illinois during the rest of the year. While in Illinois Ted worked in the electrical contracting firm owned by his brother, Florian Cleys.

Throughout the period of their separation, Ted collected the income from the resort and paid the expenses. As personal property wore out, he replaced it. Phyllis did not participate in the management of either of the properties after 1973.

Ted discovered he had cancer in 1981. Just before his death in October 1981, Ted transferred his interest in the Moose Lake property to Florian by quit-claim deed and assignment of the contract for deed. In these documents Ted excepted the portion of the Moose Lake property upon which the "main house" was situated, which he referred to as his homestead. Ted also conveyed to Florian by quit-claim deed all of his interest in the Farm Lake property. Phyllis did not join in or consent to the conveyances of any of the property.

Ted also executed his last will and testament in October 1981, naming Florian personal representative and leaving his entire testamentary estate to Florian without making any provision for either his wife or daughter. The will has never been offered for probate.

After Ted's death, Phyllis initiated an action to quiet title to the Farm Lake and Moose Lake properties. Florian counterclaimed for contribution for payments made in connection with those parcels. He also requested reimbursement for funeral expenses. Cathleen intervened.

The trial court concluded:

1. The Moose Lake property was jointly owned by Ted and Phyllis, and Ted occupied it as his homestead until his death.

2. The conveyances from Ted to Florian severed the joint tenancies of Ted and Phyllis in the Farm Lake and Moose Lake properties but were not effective to convey Ted's interest in those properties because Phyllis did not join in them.

3. The conveyances created tenancies in common between Ted and Phyllis, with

each person owning an undivided one-half interest in each property.

4. Cathleen became the owner of Ted's undivided one-half interest in the Moose Lake property, subject to a life estate in Phyllis.

5. Phyllis became the owner of an undivided three-quarters interest in the Farm Lake property, and Florian became the owner of an undivided one-fourth interest.

6. Ted was declared owner of the personal property on the Moose Lake property since it was perishable and had been replaced from time to time at his expense. In addition, the statute of limitations barred Phyllis' claim to any of this property.

7. Ted effectively conveyed his interest in the personal property of Moose Lake to Florian before his death.

8. Phyllis is entitled to 50 percent of the personal property at Farm Lake along with her statutory maintenance and selection of personal property from Ted's 50 percent.

9. Ted was not entitled to contribution from Phyllis for payments made on the contracts and taxes on either property during his lifetime, and his representative is not now entitled to contribution.

## ISSUES

1. Was the "Moose Lake" property Ted Cleys' homestead at the time of his death?

2. Is the trial court's determination that the resort on the Moose Lake property had no value attributable to goodwill clearly erroneous?

3. Is Florian Cleys entitled to contribution from Phyllis Cleys for payments made by Ted Cleys toward the obligations existing against the property held in joint tenancy by Phyllis and Ted?

4. Is Florian Cleys entitled to reimbursement from the estate of Ted Cleys for the latter's funeral expenses?

5. Did Ted Cleys make a valid intervivos gift of the personal property at Moose Lake to Florian Cleys?

6. Are Phyllis Cleys and Cathleen Cleys Rank entitled to attorney's fees in this action?

## DISCUSSION

### Standard of Review

This dispute was tried before the court sitting without a jury. On review by an appellate court, "a finding of the trial court is not to be disturbed unless clearly erroneous, either upon a clear demonstration that it is without substantial evidentiary support or that it was induced by an erroneous view of the law." *Ortendahl v. Bergmann*, 343 N.W.2d 309, 311 (Minn.Ct. App.1984). *See also Estate of Serbus v. Serbus*, 324 N.W.2d 381, 385 (Minn.1982).

### I

#### A. *Definition of homestead.*

Minnesota has enacted two statutes which prevent one spouse from disposing of a homestead without the consent of the other. Minn.Stat. § 525.145(1)(b) (1982) provides in relevant part:

Where there is a surviving spouse the homestead, including a manufactured home which is the family residence, shall descend free from any testamentary or other disposition thereof to which the spouse has not consented in writing or by election to take under the will as provided by law, as follows:

\* \* \* \* \* \*

(b) If there be children or issue of deceased children surviving, then to the spouse for the term of the spouse's natural life and the remainder in equal shares to the children and the issue of deceased children by right of representation.

Minn.Stat. § 507.02 (1982) provides in pertinent part:

If the owner is married, no conveyance of the homestead, except \* \* \* a severance of a joint tenancy pursuant to section 500.19, subdivision 5, shall be valid without the signatures of both husband and wife.

A husband and wife, by their joint deed, may convey the real estate of either. *The husband, by his separate deed, may convey any real estate owned by him, except the homestead,* subject to the rights of his wife therein; and the wife, by her separate deed, may convey any real estate owned by her, except the homestead, subject to the rights of her husband therein * * *.

(Emphasis added).

The trial court found the Moose Lake property was Ted's homestead at the time of his death. Florian argues this finding is clearly erroneous because Ted had no homestead at his death.

Florian contends that "homestead" has two different meanings depending upon the situation in which the term is used. He argues that Minn.Stat. § 510.01 (1982), which defines "homestead" as "[t]he house owned and occupied by a debtor as his dwelling place, together with the land upon which it is situated," is the "debtor protection view," and is not applicable to this case. Rather, he argues, a property must be the "family residence" and "joint abode" of both spouses.

Florian argues first that § 525.145 did not contain a definition of homestead until 1981, when the legislature added the provision for manufactured homes, which are "family residence[s]." *See* 1981 Minn. Laws ch. 105, § 1; *id.* ch. 365, § 9. Florian contends that with this amendment the legislature indicated that it is the use of property as a family residence that gives property homestead status. He concludes that because Ted did not live with his family at Moose Lake, the house cannot be considered his homestead.

■ We disagree. The 1981 amendment reflects nothing more than the legislature's recognition that a manufactured home, even though mobile, may be homestead property.

Second, Florian cites two Minnesota decisions, *Bacon v. Mirau,* 148 Minn. 268, 269, 181 N.W. 579, 580 (1921), and *Hendrickson v. Minneapolis Federal Savings and Loan*

*Association,* 281 Minn. 462, 466, 161 N.W.2d 688, 691 (1968), in support of his interpretation of the homestead term. These cases say the purpose of Minn.Stat. § 507.02 is to secure for the family a house to live in.

■ Again, we disagree with Florian's conclusion. The property's status as a family residence is irrelevant under the descent and distribution statutes. *See, e.g., St. Denis v. Mullen,* 157 Minn. 266, 196 N.W. 258 (1923), *Rux v. Adam,* 143 Minn. 35, 172 N.W. 912 (1919), *Murphy v. Renner,* 99 Minn. 348, 109 N.W. 593 (1906). If the property is owned and occupied by one spouse and otherwise qualifies as a homestead, it passes by statute to the surviving spouse for life, remainder to the children.

B. *Did Moose Lake qualify as Ted Cleys' homestead?*

■ Appellant argues that even if "homestead" does not mean family residence, Ted did not have a homestead at the time of his death. Minn.Stat. § 510.01 states that in order for a property to qualify as a homestead the property must be "owned and occupied by a debtor as his dwelling place." The test to be used in determining whether the house is "owned and occupied" by the debtor is whether the ownership and occupancy affords a significant "community connection" which gives reason to believe that preservation of that connection will make the debtor and his or her family better able to be self-sustaining. *Denzer v. Prendergast,* 267 Minn. 212, 218, 126 N.W.2d 440, 444 (1964).

Florian argues Moose Lake was not Ted's homestead because he was physically absent from it for a substantial period of each year, the property was not winterized, and his "community connection" was minimal because he was present at Moose Lake only for business reasons.

■ None of Florian's contentions supplies a basis for denying homestead treatment. The statute does not require uninterrupted physical presence, nor does it require that the homestead be winterized.

Moreover, Ted's connection to the community was apparent from the following evidence:

1. Ted lived at the resort and occupied the main house for a substantial portion of each year; he kept his personal effects there throughout the year and was living in the main house until he entered the hospital where he died.

2. Ted declared Moose Lake as his homestead in the deed and assignment by which he attempted to convey his interest to Florian.

3. Ted executed his last will and testament declaring that he was a resident of Lake County, Minnesota.

4. Ted maintained a Minnesota driver's license and filed income tax returns as a resident of Minnesota.

 These facts support the trial court's finding that Moose Lake was Ted's homestead, and that finding will not be disturbed on appeal.[1]

## II

 The trial court awarded Florian the personal property of the resort at Moose Lake but determined the resort had no value attributable to goodwill. Florian argues this finding is clearly erroneous because the issue of whether the resort had any goodwill was not presented to the trial court, and no evidence was introduced on which the trial court could have based its finding. Due to the paucity of evidence submitted on this subject, the trial court had no alternative but to rule as it did. Thus, the failure to award goodwill was not clearly erroneous.

## III

The trial court found Ted made all the contract-for-deed payments, the mortgage payments, and the real estate tax payments on the Moose Lake and Farm Lake properties without the assistance of Phyllis from 1973 until 1981. Nevertheless, the court concluded Ted did not establish his entitlement to contribution from Phyllis and that Florian, as the personal representative of Ted's estate, is not now entitled to contribution. Florian argues this ruling is clearly erroneous.

Minn.Stat. § 557.06 (1982) states:

One joint tenant or tenant in common, and his executors or administrators, may maintain an action against his cotenant for receiving more than his just proportion of the rents and profits of the estate owned by them as joint tenants or tenants in common.

 Contribution is a creature of equity and thus is subject to equitable considerations. *See Hoverson v. Hoverson*, 216 Minn. 228, 235, 12 N.W.2d 501, 505 (1943); *In Re Westerhoff*, 688 F.2d 62, 64 (8th Cir.1982). Moreover, contribution among co-tenants does not mature until the party owing a common liability has paid more than his just share of the obligation. *Hoverson*, 216 Minn. at 236, 12 N.W.2d at 506. Thus, in considering a claim for contribution the court should balance the benefits flowing to the party who occupied the property and received the rents and profits against the burden of paying the necessary expenses.

 In this case Ted paid all of the joint debts of the parties relating to the two properties. However, he also received all of the profits and exclusive use of the properties. Furthermore, it appears Ted occupied the properties by choice during the period of the separation. He could have asked Phyllis to contribute or to sell the property. Failing these alternatives, he could have dissolved the marriage. Ted availed himself of none of these remedies during his lifetime. For these reasons we

1. The trial court found that Ted's deed and assignment of Moose Lake to Florian failed as an effective conveyance because Phyllis did not assent to it, but it was effective to sever the joint tenancy, pursuant to Minn.Stat. § 500.19, subd. 5 (1982). Respondents argue in their brief that this was error. Because respondents did not raise this issue in their notice of review, it is not properly before this court and will not be considered. *See Ford v. Chicago, Milwaukee, St. Paul and Pacific R.R. Co.*, 294 N.W.2d 844, 845 (Minn.1980); *Hunt v. Estate of Hanson*, 356 N.W.2d 323, 328 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Jan. 9, 1985).

find the trial court's determination that Ted was not entitled to the equitable remedy of contribution is sustained by the evidence.

## IV

■ Florian paid Ted's funeral expenses from his own funds and now asserts he is entitled to reimbursement.

Minn.Stat. § 524.1–201(4) (1982) defines claims against an estate to include funeral expenses. However, Minn.Stat. § 524.3–803(b)(2) provides:

> (b) All claims against a decedent's estate which arise at or after the death of the decedent * * * are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented * * *:
>
> *　　*　　*　　*　　*　　*
>
> (2) * * * within four months after it arises.

We deem the trial court's silence on this issue a denial of Florian's request for reimbursement. We do not find this result to be clearly erroneous in view of the tardiness of the claim.

## V

■ Respondents challenge the trial court's finding that before his death, Ted effectively conveyed all his interest in the personal property at the Moose Lake resort to Florian by instruments of deed and assignment. The trial court found the personal property was acquired in joint tenancy. However, as the property wore out during the years when Ted ran the resort by himself, he replaced it with new property as needed. Thus, the personal property that was originally held in joint tenancy when Moose Lake was purchased did not exist when Ted conveyed the property to Florian.

■ In addition, had Phyllis wanted to make a claim for any of the Moose Lake personal property, she should have done so within the time limits of the applicable statute of limitations. The statute of limitations for the recovery of personal property is six years. Minn.Stat. § 541.05 (1982).

The statute began to run against Phyllis when she left Ted in October 1973, and he began to treat the property as his own. *See Muus v. Muus*, 29 Minn. 115, 118–19, 12 N.W. 343, 344–45 (1882). We agree with the trial court's finding that Phyllis' claim is barred by the statute of limitations.

## VI

■ In their post-trial memorandum respondents sought an award for their attorney's fees from Ted's estate. We again treat the trial court's silence on this issue as a denial. Attorney's fees may be awarded if the decedent's wrongful conduct thrust them into litigation. *See First Fiduciary Corp. v. Blanco*, 276 N.W.2d 30, 34 (Minn.1979) (quoting *Dworsky v. Vermes Credit Jewelry, Inc.*, 244 Minn. 62, 70, 69 N.W.2d 118, 124 (1955)).

■ Respondents argue that Ted acted wrongfully in "consciously and deliberately" recording instruments affecting the title to land in which Phyllis had an absolute interest and in executing a will that would completely disinherit her when he knew he could not defeat Phyllis' rightful share in his estate.

There is no evidence Ted's actions were done with malice or with the intent to thrust respondents into litigation; therefore, we hold the trial court did not abuse its discretion in failing to order attorney's fees in this case.

## DECISION

Affirmed.