**John O. PERBIX, as Personal Representative of the Estate of Barbara J. Perbix, Respondent,**

v.

**Gerald J. HANSEN, John Doe and Mary Doe, as Occupants of the Premises Described Below; and Richard Roe and Susan Roe, as Unknown Defendants, Having a Claim or Interest in the Property Described Below, Appellants.**

No. C0-87-1432.

Court of Appeals of Minnesota.

Feb. 9, 1988.

Ronald H. Groth, Thomson, Wahlfors, Moran & Groth, Ltd., Minneapolis, for respondent.

Barry Lazarus, Lazarus & Kelley, Minneapolis, for appellants.

Heard, considered and decided by WOZNIAK, C.J., and PARKER and FOLEY, JJ.

## OPINION

WOZNIAK, Chief Judge.

Gerald Hansen appeals the judgment entered against him following denial of his motion for amended findings of fact and conclusions of law. Hansen purchased a parcel of property from Fred Baker, who was divorced from respondent Barbara Perbix in 1963. In 1980, Barbara learned that she had an ownership interest in the homestead that she and Fred were given prior to their divorce. The trial court held that Barbara had a one-half interest in the real estate involved, and granted judgment in her favor. We affirm.

## FACTS

Fred Baker and Barbara Perbix were married in 1953. In 1958, Fred's parents conveyed the subject property to him and Barbara Perbix (then Baker) as joint tenants. Fred's father then paid for the construction of a home on the site, in which they both lived.

In 1961, Barbara filed for divorce. She alleged in her complaint "[t]hat the home of the parties is in joint tenancy and has been paid for by the father of the defendant."

The parties agreed to a stipulated dissolution, the terms of which included the following:

> that being specifically understood and agreed that this agreement and the provisions thereof shall constitute a full and complete settlement of all property rights of the parties hereto and Plaintiff does specifically waive any claim against any of the property of Defendant or any right for anything of value from said Defendant, save and except as herein provided.

The stipulation did not specifically mention the parties' homestead.

At the 1963 default dissolution hearing, Barbara testified (in response to questions posed by her counsel) as follows:

Q. Now, do you own any real estate?

A. No, we don't.

Q. You have an equity in a place that actually your father-in-law has bought

for you which is covered by this stipulation?

A. Yes.

\* \* \* \* \* \*

Q. You already executed a quitclaim deed to this property that stands in the name of your husband's father, is that right?

A. Yes.

No quit claim deed was ever recorded on the property, and none was produced at trial. Barbara also indicated that she was satisfied with the terms of the stipulated settlement.

The court approved the stipulated dissolution, and in its May 8, 1963 judgment and decree stated:

That [Barbara] hereby \* \* \* is divested of any interest in any of the property of the defendant or any right for anything of value from said defendant, as provided for by the stipulation of the parties on file and of record hereof.

No appeal was taken from that judgment.

From 1963 until 1979, Fred had sole use and occupancy of the subject property. In October 1979, Fred sold the property to appellant Gerald Hansen. Hansen informed Barbara that her name still appeared on the title, and requested that she quit claim the property to him. Barbara consulted an attorney, and instituted a partition action in May 1980. In response, Hansen filed a slander of title suit against Barbara. The two matters were consolidated by agreement of the parties.

Barbara's deposition was taken in 1981. She recalls neither the specifics of acquiring the piece of property nor signing any papers regarding the property. She never was given copies of any documents concerning the property. She lived at the property by herself during the divorce proceeding, and "assumed" her husband got the home after the divorce was finalized. She thought that she and her husband did not own the home, that it belonged to her husband's father. As far as she knew, she never possessed any ownership interest in the property.

She testified that her understanding of what the "joint tenancy" alleged in her 1961 divorce action meant simply was that she and her husband were living together in the home. She denied any further understanding or knowledge of what the term "joint tenancy" meant.

When Barbara signed the stipulated settlement of the 1963 divorce, she did not think that she was going to get anything beyond what was described in the stipulation.

Barbara did not think that she signed any transfer documents on the property. She did not remember testifying at the dissolution that she had "already executed a Quit Claim Deed to this property that stands in [the name of] your husband's father."

In July 1980, in exchange for Barbara's execution of a quit claim deed, Fred stipulated to a $25,000 damage award to Barbara if she were to prevail in her suit. The agreement also preserved Hansen's claim that if Barbara was found to have an ownership interest, Hansen was entitled to contribution from her in the amount of one-half the delinquent real estate taxes he paid in order to register his interest in the property.

In 1983, Barbara was killed in a car accident. Her husband continued the suit as personal representative of her estate. Trial was to the court. The evidence essentially was documentary (original deed to husband and wife, stipulation & decree in 1963 divorce, Barbara's deposition testimony). Fred, a resident of Florida, did not testify or attend the trial.

The trial court initially granted judgment for Hansen, finding that Barbara had no interest in the subject property. Following a motion for amended findings and conclusions of law, the trial court reversed its original decision. The court found that the 1963 stipulation and decree did not address the ownership of the subject property, and Hansen had failed to show by clear and convincing evidence that a lost deed from Barbara to Fred's father (and, presumably, from Fred's father back to Fred) existed. The court denied Hansen's request that

Barbara's estate contribute one-half the amount of delinquent taxes he paid.

## ISSUES

1. Was Barbara's estate barred from pursuing her claim by reason of laches?

2. Was Barbara's interest in the subject property divested by the court by the 1963 dissolution judgment and decree?

3. Did the trial court err in refusing to order Barbara's estate to contribute one-half of the delinquent real estate taxes paid by Hansen?

## ANALYSIS

■ 1. The doctrine of laches does not apply to this case. Barbara's claim to the real estate exists by virtue of the 1958 recorded deed. The title to this real estate was, throughout the years from her divorce to the deed from Fred to Hansen (at which time the parties became tenants in common), in joint tenancy between Fred and Barbara. Her interest exists despite not having made a "claim" until it is shown that she has no interest. Applying laches would place a record property owner in the position of having to make a claim on property that is already in her name. We will not create such a burden on record owners of real property.

■ 2. Where the critical evidence in a trial court's decision is documentary, this court does not need to defer to the trial court's assessment of the meaning of that evidence. *In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225, 243 N.W.2d 302, 305 (1976). In this case, the trial court's decision is based entirely on documentary evidence, so this court may review the facts de novo.

We begin our analysis by following the chain of title from the deed to Fred and Barbara. They clearly became joint tenants in 1958. As there is no recorded instrument that divests Barbara of her interest, Hansen is required to show that Barbara's interest was divested, either through a lost deed or through the divorce decree. As Hansen claims that a deed was part of the transactions involved in the 1963 di-

vorce decree, he is basing his claim on a lost deed. We must look to the divorce and its surrounding circumstances to determine whether the facts meet the standard for proving a lost deed.

■ The proponent of a lost deed bears the burden of establishing the deed by clear and convincing evidence. *Buttruff v. Robinson*, 181 Minn. 45, 46, 231 N.W. 414, 414 (1930). Hansen argues that several facts show that Barbara was divested of her interest in the property.

■ First, the 1963 decree provided that Barbara was "divested of any interest in any of the property of [Fred Baker]." This property, however, was not Fred's alone. It belonged to him and Barbara in joint tenancy.

Second, the decree states that it was a "final disposition of the property rights" of the parties to the decree. However, the decree did not specifically address the rights of the parties regarding the subject property. This does not constitute clear and convincing evidence of an ownership transfer.

Third, Hansen argues that the reference in the testimony (that Barbara admitted to executing a quit claim deed to her father-in-law to the subject property) establishes that Barbara has no interest in the property. The testimony regarding this deed is ambiguous:

Q. You already executed a Quit Claim Deed *to this property that stands in the name of your husband's father*, is that right?
A. Yes.

(Emphasis added.) The property in question, however, did *not* stand in the name of her husband's father; it stood in the names of Fred and Barbara, in joint tenancy.

Hansen also points to the fact that Barbara alleged, in her divorce complaint, that she was a joint tenant in the property. Further, she indicated at the default hearing that she had an "equity" in the property, but deeded it to her father-in-law. While Barbara did plead a joint tenant's interest in the property, she denied having any ownership interest in any real estate at

the default hearing (other than her equitable interest). These facts only serve to illustrate the fact that Barbara had no clear understanding of her registered ownership interest at the time Hansen argues she deeded it away. Again, they do not constitute clear and convincing evidence that she transferred her ownership interest in this particular property at the time of the dissolution.

3. Hansen cites no law supporting his claim that Barbara's estate should contribute one-half the amount paid by Hansen for real estate taxes since he purchased his interest. He claims Barbara should be required to contribute to the taxes which accrued during the time she had a registered ownership interest in the property.

Contribution is a creature of equity and thus is subject to equitable considerations. *Cleys v. Cleys*, 363 N.W.2d 65, 71 (Minn.Ct.App.1985) (citing *Hoverson v. Hoverson*, 216 Minn. 228, 235, 12 N.W.2d 501, 505 (1943)). In considering a claim for contribution, the court is to balance the benefits flowing to the party who occupied the premises against the burden of paying the necessary expenses. *Cleys* at 71.

The trial court did not specifically explain its reason for denying the contribution claim. Such a decision is within the scope of its equitable discretion. As in *Cleys*, the benefits of possession (solely to the husband) weigh against any contribution claim against a tenant who is not in possession.

Additionally, Hansen purchased the property with the knowledge of the delinquent tax liability. His claim for contribution against a joint tenant who was not in possession, from whom he did not negotiate regarding the purchase of the property, has little support in equity.

We are left with the distinct feeling that numerous pieces to this legal puzzle are missing; those facts might have provided clear and convincing evidence of a lost deed. While we are not unsympathetic to the quandry faced by both parties, this case would not have arisen had the parties drafted and executed legally sufficient doc-umentation of whatever it was that transpired during the 1963 divorce.

## DECISION

On the basis of the record before us, we agree with the trial court's assessment of the proof of lost deed as failing to meet the clear and convincing standard.

Affirmed.