HSBC MORTGAGE SERVICES, INC., Respondent,

v.

Thomas A. GRAIKOWSKI, Appellant,

KariAnn Kimberly Coleman, et al., Defendants.

No. A11–1456.

Court of Appeals of Minnesota.

March 26, 2012.

Review Denied June 19, 2012.

Brian M. Sund, Maret R. Olson, Morrison Fenske & Sund, P.L.L.C., Minnetonka, MN, for respondent.

Bryan R. Battina, Battina Law, PLLC, Wayzata, MN, for appellant.

Considered and decided by SCHELLHAS, Presiding Judge; KALITOWSKI, Judge; and HUDSON, Judge.

## OPINION

SCHELLHAS, Judge.

In this mortgage dispute, appellant fee owner argues that (1) the district court erred when it did not adjudge his mortgage void under Minn.Stat. § 507.02 (2010),[1] and (2) the facts of the case do not support the application of equitable estoppel. We conclude that appellant is equitably estopped from challenging the validity of his mortgage, and we affirm.

## FACTS

Appellant Thomas Graikowski is the fee owner of certain real property bearing the street address 17431 Auburn Road in Grasston (the property). At all relevant times herein, the property was Graikowski's homestead.

In January 2006, Graikowski sought to refinance his homestead mortgage debt and some unsecured credit-card debt. On January 25, he applied for a mortgage loan by telephone with a loan officer, who represented the predecessor in interest of re-

---

1. We cite the most recent version of Minn. Stat. § 507.02 because it has not been amended in relevant part. *See Interstate Power Co. v. Nobles Cnty. Bd. of Comm'rs,* 617 N.W.2d 566, 575 (Minn.2000) (stating that, generally, "appellate courts apply the law as it exists at the time they rule on a case" unless doing so would affect vested rights or result in a manifest injustice). For similar reasons, we also cite the current versions of other statutes involved in this appeal.

spondent HSBC Mortgage Services Inc.[2] Graikowski told the loan officer that he acquired the property in 1993, held title to the property with a spouse within the previous three years, and was currently "single." The loan officer filled out a uniform residential-loan application based on the information that Graikowski provided.

Graikowski closed on a mortgage loan in the amount of $170,100 on June 26. Two days before the closing, Graikowski married defendant KariAnn Coleman. At the closing, Graikowski signed and dated the uniform residential-loan application, which identified him as a "[s]ingle man," in two places. First, he signed following an acknowledgment that he represented to the lender and its agents that all the information in the loan application was correct as of June 26, that he could be subject to criminal penalties for misrepresentation, and that he was obligated to amend or supplement the information in the loan application. Second, he signed at the end of the loan application, acknowledging that he understood that it was a federal crime to "knowingly make any false statements concerning any of the above facts [in the loan application]." Graikowski also executed a promissory note and mortgage in favor of HSBC to secure the $170,100 loan. The mortgage states Graikowski's marital status as "unmarried." Coleman did not attend the loan closing on June 26 and was unaware of the loan. She did not sign the loan application, the promissory note, or the mortgage.

In 2007, Graikowski defaulted on the loan. In 2008, Graikowski and Coleman dissolved their marriage and, under the stipulated marriage-dissolution judgment, Graikowski received sole title to the property. In 2010, HSBC commenced an action against Graikowski, Coleman, and a judgment lienholder, alleging fraud, among

other things, and seeking a declaration that the mortgage is valid and enforceable and a judgment of foreclosure of the mortgage. Graikowski moved for partial summary judgment, seeking to void the mortgage but not the promissory note. HSBC moved for summary judgment and sought a default judgment against Coleman because she neither answered HSBC's complaint nor made any appearance. The district court denied Graikowski's motion and granted HSBC's motion; adjudicated the mortgage valid; entered a judgment of foreclosure on the property in favor of HSBC; and entered default judgment against Coleman, barring her from asserting any interest in the property or from declaring the mortgage invalid.

This appeal by Graikowski follows.

## ISSUE

Should Graikowski be estopped from challenging the validity of his mortgage under Minn.Stat. § 507.02?

## ANALYSIS

Graikowski argues that the district court erred by not declaring his mortgage void under Minn.Stat. § 507.02 and by granting summary judgment to HSBC. Graikowski argues that because Coleman did not sign the mortgage, it is void under the unambiguous language of section 507.02. We review a decision to grant or deny summary judgment de novo. *Allen v. Burnet Realty, LLC*, 801 N.W.2d 153, 156 (Minn. 2011).

▮▮▮ With exceptions that are not relevant in this case, section 507.02 provides, "If the owner is married, no conveyance of the homestead ... shall be valid without the signatures of both spouses." Minn. Stat. § 507.02. A mortgage is a convey-

---

**2.** Hereafter, references to HSBC include its    predecessor.

ance. Minn.Stat. § 507.01 (2010); *Nat'l City Bank v. Engler*, 777 N.W.2d 762, 765 (Minn.App.2010), *review denied* (Minn. Apr. 20, 2010). A person's "homestead" is "[t]he house owned and occupied by a debtor as the debtor's dwelling place." Minn.Stat. § 510.01 (2010). Section 507.02 "evidences the clear and unambiguous legislative policy of ensuring a secure homestead for families." *Dvorak v. Maring*, 285 N.W.2d 675, 677 (Minn.1979). "The purpose of Minn.Stat. § 507.02[ ] ... is to protect the non-signing spouse from an unknowing conveyance of his or her interest in the homestead." *Engler*, 777 N.W.2d at 766.

Minnesota courts have applied section 507.02 in numerous cases to protect a non-signing spouse to a conveyance. *See, e.g., Dvorak*, 285 N.W.2d at 677 (holding that contract for sale of homestead without the signature of both spouses is not merely voidable but is void and the buyer acquires no rights whatsoever); *Schultz v. Stiernagle*, 270 N.W.2d 269, 271 (Minn.1978) (holding, as to homestead portion of land, that contract for sale was void because contract was not executed by owner's spouse); *Anderson v. First Nat'l Bank of Pine City*, 303 Minn. 408, 412–13, 228 N.W.2d 257, 260 (1975) (holding that nonsigning spouse was not equitably estopped from asserting invalidity of mortgage deed when he did not retain benefits of transaction); *Marr v. Bradley*, 239 Minn. 503, 509, 59 N.W.2d 331, 334 (1953) (stating that a contract to convey a homestead executed by only one spouse is wholly void and has no validity for any purpose until it is adopted or confirmed by the nonsigning spouse); *Lennartz v. Montgomery*, 138 Minn. 170, 174, 164 N.W. 899, 901 (1917) (noting rule that "where the husband enters into a contract for the sale of his wife's real estate, and she thereafter confirms his act, and stands ready to perform, the other party cannot take advantage of the statute to repudiate

the obligations undertaken by him" (quotation omitted)); *Weitzner v. Thingstad*, 55 Minn. 244, 247–48, 56 N.W. 817, 817–18 (1893) (voiding portion of contract that conveyed homestead because wife did not sign contract); *Wells Fargo Home Mortg., Inc. v. Chojnacki*, 668 N.W.2d 1, 3, 6 (Minn.App.2003) (holding that when mortgage document stated that husband was married, but bank failed to procure wife's signature, nonsigning wife was not estopped by ratification from challenging validity of mortgage under section 507.02); *Wells Fargo Home Mortg., Inc. v. Newton*, 646 N.W.2d 888, 891, 899–900 (Minn.App. 2002) (concluding under section 507.02 that extent of mortgage that secured debt other than unpaid purchase price under contract for deed was invalid because it lacked husband's signature), *review denied* (Minn. Sept. 25, 2002); *see also Larson v. Wells Fargo Bank, N.A.*, 799 F.Supp.2d 961, 962, 966–67 (D.Minn.2011) (holding that nonsigning wife, who had lived separately from husband for 20 years, was not estopped from challenging validity of mortgage under section 507.02).

■ Despite the plain language of section 507.02, "even though great importance is attached to the homestead right, under certain circumstances a [nonsigning spouse] may be estopped from denying a sale of the homestead even if the statutory requirements are not met." *Dvorak*, 285 N.W.2d at 677–78 (requiring the presence of three factors for successful application of equitable estoppel: "[1] the nonsigning spouse's consent and full knowledge of the transaction, [2] retention of benefits, and [3] delivery of possession to the grantee, who typically took possession and made valuable improvements"); *see St. Denis v. Mullen*, 157 Minn. 266, 270–71, 196 N.W. 258, 259–60 (1923) (estopping nonsigning wife from challenging conveyance when wife and husband were separated for 32

years, wife knew husband lived with another woman and knew husband died, wife failed to timely contest husband's conveyance to another woman, and an innocent purchaser was involved).

In *Dvorak*, the supreme court stated that "detrimental reliance by the party seeking relief is critical to a finding of estoppel" and declined to estop the non-signing spouse from challenging the validity of the conveyance under section 507.02 because the party seeking relief could not show detrimental reliance. *Dvorak*, 285 N.W.2d at 678; *cf. Karnitz v. Wells Fargo Bank, N.A.*, 572 F.3d 572, 574–75 (8th Cir.2009) (noting *Dvorak* factors and estopping both signing and nonsigning spouses from challenging the validity of their mortgage because nonsigning spouse knew about and intended to mortgage her homestead, retained the benefit of the mortgage, and lender significantly changed its position by lending couple over $130,000).

■ In this case, the parties do not dispute that the property was Graikowski's homestead and that he was married to Coleman when he alone signed the mortgage conveying a property interest to HSBC. Under the plain language of section 507.02, Graikowski's mortgage is void because it lacked Coleman's signature. But this does not end our analysis, because no Minnesota state court case supports the application of section 507.02 to void a conveyance solely to protect a signing spouse. To the contrary, the Minnesota Supreme Court has estopped a signing spouse from challenging the validity of a conveyance under section 507.02 in *Bozich v. First State Bank of Buhl*, 150 Minn. 241, 184 N.W. 1021 (1921).

Bozich, who was married to Helda, "represented to the bank in his application for the loan, and in response to a direct question, that he was a single man, and it was so recited in the mortgage and in the acknowledgment." *Bozich*, 150 Minn. at 242, 184 N.W. at 1021. The bank "believed and relied upon such representation and by it was induced to make the loan and take the mortgage [on Bozich's homestead]." *Id.* The supreme court stated that

> Bozich knew that his wife should sign. Whether he knew the full legal effect of a failure to sign when the mortgage was upon the homestead is not apparent. He knew that the bank supposed it was getting a good lien and his representation was necessarily fraudulent.

*Id.* After Helda died, Bozich and his new wife brought an action to cancel the mortgage on the basis that Helda did not join it. The district court said:

> Stanley Bozich unquestionably perpetrated a fraud on the defendant. The purpose of estoppel is to prevent fraud resulting in injustice. If any state of facts justifies the application of the doctrine of estoppel it ought to be applied here. Stanley obtained $3,000 from the defendant by falsely representing that he was a single man. He now asks the court to release the mortgaged property from the lien of the mortgage without requiring him to pay the loan. His wife is dead. No one will be benefited by such decree but the party who perpetrated the fraud. The courts cannot be used for such a purpose.

*Id.* at 242–43, 184 N.W. at 1021 (quotation omitted). The supreme court agreed with the district court's result and said:

> Many cases, speaking directly to the facts presented and with emphasis upon the importance of preserving unimpaired the homestead right, have used language from which on casual view an inference might be drawn that an estoppel cannot be invoked at all when a

spouse fails to sign. Usually in these cases the estoppel was predicated upon covenants in the conveyance.... There are cases holding or implying that an estoppel may be invoked from facts apart from the covenants.... The defendant does not predicate the estoppel which it invokes upon the covenants in the mortgage. Upon inquiry made Bozich fraudulently represented that he was unmarried and by his misrepresentation induced the defendant to part with $3,000 upon the faith of the proffered security. The fraudulent misrepresentation is the basis of the estoppel claimed.

*Id.* at 243, 184 N.W. at 1021–22 (citations omitted). The supreme court held that:

[W]here as here the mortgagor, a married man, procures a loan on his homestead by fraudulently representing that he is unmarried, and afterwards his wife dies, ownership remaining in the meantime unchanged, the situation then being that a mortgage executed by himself alone is valid, he will not be heard to say in a court of equity that the mortgage which he made when his wife was living was void and will be held estopped to assert its invalidity.

*Id.* at 243–44, 184 N.W. at 1022.

■ Graikowski argues that nothing in the record suggests that he knew that his wife needed to sign the mortgage, that he knew that the documents he signed at closing indicated that he was single, or that he intended to perpetrate a fraud. He argues that at all times he acted in good faith. His arguments are unavailing. "In the absence of fraud or misrepresentation, a person who signs a contract may not avoid it on the ground that he did not read it or thought its terms to be different." *Gartner v. Eikill,* 319 N.W.2d 397, 398 (Minn.1982); *see Bus. Bank v. Han-*

*son,* 769 N.W.2d 285, 288 (Minn.2009) (indicating that a mortgage is a contract).

Like the supreme court in *Bozich,* we are unpersuaded by Graikowski's claim that the mortgage, which he executed two days after his marriage to Coleman, is void because she did not sign it. Although on January 25, 2006, Graikowski's response to the loan officer's direct inquiry about his marital status was true, Graikowski signed the loan application on June 26, after his marriage to Coleman. In the loan application, Graikowski represented that the information provided was true and correct "as of the date set forth opposite [his] signature[, January 26, 2006,] and that *any intentional or negligent misrepresentation* of [the] information contained in [the] application may result in civil liability." Moreover, Graikowski represented in the application that "the Lender ... may *continuously rely on the information contained in the application,* and *I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan.*" (Emphasis added.)

When Graikowski signed the loan application on June 26, 2006, the information contained in it—that he was a "[s]ingle man"—was false. Graikowski was obligated to correct that information and did not do so. Based on Graikowski's false representation about his marital status, HSBC loaned him $170,100, believing that its loan would be secured by a first mortgage against his homestead. Graikowski's assertion that he did not read the application at the closing on June 26 has no legal significance, and the district court properly concluded that it does not create a genuine issue of material fact.

The equitable estoppel factors articulated in *Dvorak* are not applicable here because, unlike *Dvorak,* HSBC seeks to es-

top only a signing spouse from challenging the validity of a conveyance. In *Dvorak*, a purchaser sought to estop a nonsigning wife from challenging the validity of a contract for the sale of her homestead. *Dvorak*, 285 N.W.2d at 677. In this case, albeit through marriage dissolution, Coleman, the nonsigning spouse, claims no interest in the homestead. We conclude that Graikowski, as the signing spouse, is estopped from challenging the validity of his mortgage because (1) he procured the conveyance through an intentional or negligent misrepresentation of fact, (2) the lender relied on the misrepresentation to its detriment, and (3) he retained the benefits.

## DECISION

Graikowski is equitably estopped from challenging the validity of his mortgage under Minn.Stat. § 507.02 because he (1) procured the mortgage through an intentional or negligent misrepresentation of fact, (2) HSBC relied on the misrepresentation to its detriment, and (3) Graikowski retained the benefits. Accordingly, the district court properly granted summary judgment to HSBC.

**Affirmed.**